(71 Misc. Rep. 87.)

### In re ROBINSON'S WILL.

(Surrogate's Court, Westchester County. February, 1911.)

1. Wills (§ 672*)—Validity—Trusts.

A will created a trust for two lives in being and provided for payment of the income only in the discretion of the trustees. *Held* invalid, as the trustees are left with uncontrolled discretion, and able to make or refuse payments at will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1579–1581; Dec. Dig. § 672.*]

2. Charities (§ 12*)—Charitable Use.

A trust to provide education to such persons as the trustees shall select contemplates an instruction along some special line as opposed to general school training, and is not necessarily a charitable use.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 36; Dec. Dig. § 12.*]

3. Charities (§ .10*)—Charitable Use.

Where trustees under a will are empowered to provide education for persons in need thereof, and to furnish other financial aid as may seem necessary to them, but are not obliged to furnish financial aid to poor persons only, and there is no limitation on the discretion of trustees, the provision does not constitute a charitable use.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 34; Dec. Dig. § 10.*]

In the matter of the probate of the will of Mary S. Robinson. Provisions of the will held invalid. .

Arthur M. Johnson, for trustees.
White & Otheman, for next of kin.
Edward R. O'Malley, for trust beneficiaries.

MILLARD, S. Mary S. Robinson died in the village of Mamaroneck on the 16th day of October, 1909, leaving a paper writing dated January 26, 1904, which was duly offered for probate by the executor named therein, Burton C. Meighan. A citation to attend the probate proceedings was duly issued, returnable in this court on the 27th day of December, 1909, directed to Ida Stevens Halsted and Otheman Abel Stevens, a sister and brother of deceased, her only heirs at law and next of kin. Both of these parties residing out of the state, a citation was served by publication in accordance with the order of this court, and on the return day of said citation, to wit, December 27, 1909, the matter was adjourned until January 10, 1910; and thereafter said Burton C. Meighan filed a petition for the issuance of a supplemental citation, alleging that the said last will and testament created two distinct trusts, one for the benefit of next of kin of testatrix and the other for charitable and beneficial uses, and asking that the validity or invalidity of said trusts be determined in the probate proceeding. Said petition further alleged that by the provisions, of section 12 of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

personal property law (Consol. Laws 1909, c. 41) the Attorney General of the state of New York was the representative of the beneficiaries under the trusts, and it was his duty to enforce the same by proper proceedings; that the Attorney General was not now a party to the probate proceeding, and the petition therefore prayed that a supplemental citation be issued to Edward R. O'Malley, as Attorney General of the state of New York; that thereafter the prayer of the petition was granted, and the Attorney General duly appeared in the proceeding by written notice of appearance filed in this court on the 15th day of January, 1910; that White & Otheman appeared in the proceeding for both of said next of kin and heirs at law, Otheman Abel Stevens and Ida Stevens Halsted, by virtue of a written authorization duly acknowledged and filed in this court; that the matter then, by stipulation of all parties, was adjourned until January 17, 1910, when an answer was filed on behalf of said next of kin, putting in issue the validity, construction, and effect of the sixth, seventh, eighth, ninth, and tenth clauses of the said will, and denying the allegation of the petition for supplemental citation that said provisions constituted a valid disposition of personal property under the laws of this state.

The testatrix, after bequeathing sundry specific legacies of small value, attempts to devise all the residue of her estate by the paragraphs above referred to, which are as follows:

"Sixth. I direct my said executor hereinafter named to pay over the sum of Thirty-five hundred ($3,500.00) Dollars, to himself and to Frank B. Upham, as trustees, the said trustees to hold and administer the said fund in manner and form following:

"Until the death of that one of the following named persons, Elizabeth Ann Brewer, daughter of Reuben G. Brewer, and Samuel Foster Upham, son of Rev. Frank B. Upham, who survives the other, I direct that my said trustees hold the said sum of Thirty-five hundred ($3,500.00) Dollars of said residuary estate, in trust as a permanent fund to be safely and conservatively invested in such securities as are prescribed by law.

"Seventh. I direct my said trustees to pay over out of either the principal or income or both of said fund provided for in paragraph Sixth of this my will, such sums, if any, from time to time, to my next of kin and their descendants, as shall in the discretion of my said trustees be necessary to maintain them respectively in the same station of life in which they shall be at the time of my death, and to secure for them such education, culture, and relief, in time of emergency, as may seem to my said trustees fitting to their station in life.

"And it is my express will and direction that the making of such payments, if any, be left in all things to the absolute and uncontrolled discretion of my said trustees.

"Eighth. Upon the death of that one of the said Elizabeth Ann Brewer, and Samuel Foster Upham, who shall live the longer, or upon the death prior thereto of my next of kin who shall survive me, and their descendants, the said fund and accumulations provided for in paragraph Sixth, if any remain, are to be paid over by my said trustees into the fund provided for in paragraph Ninth of this my will.

"Ninth. I direct my said executor to pay over the rest, residue and remainder of my estate to the said Burton C. Meighan, and Frank B. Upham, in trust, however, for the following uses and purposes:

"The said trustees are to invest such portion of the fund as shall not be used for the purposes herein specified in the securities prescribed by law as savings bank investments; and they are to disburse the principal or interest, or both, of said fund in their discretion as follows, to wit:

"To provide shelter, necessaries of life, education, general or specific, and such other financial aid as may seem to them fitting and proper to such persons as they shall select as being in need of the same.

"Preference is to be given to persons who are elderly or disabled from work, and to persons who are Christians of good moral character, members of one of the so-called evangelical churches, to wit: the Methodist, Baptist, Presbyterian, Congregational, Moravian or Episcopal, and who are not addicted to the use of intoxicants or tobacco, nor to attendance at theatrical entertainments.

"Tenth. I authorize and empower my said trustees in their discretion, to appoint other persons, not exceeding five, to act with them in the execution of the trusts or either of them herein provided for; and I direct that the execution of said trusts shall thereupon devolve upon all of the said trustees jointly and upon the survivors of them.

"If the said two trustees, Burton C. Meighan and Frank B. Upham, deem it advisable, they may cause a corporation to be created for the purpose of executing the trusts provided for in this will."

It is claimed by the attorney for the heirs at law and next of kin that the trust attempted to be created by the sixth clause is invalid because it provides for an accumulation of income which is not measured by minority. So far as the interest or accumulation upon such fund is concerned, I hold that he is right. It is clearly invalid, as being in contravention of section 16 of the personal property law (Laws 1909, c. 45); but this would not invalidate the trust sought to be created by the sixth and seventh clauses, except that a provision would have to be made that the surplus income arising therefrom should pass into the residuary estate and be distributed in accordance with the ninth clause of said will, if for other reasons paragraphs sixth and seventh could be sustained as a valid trust. This will make no difference, as will appear later in this decision, on account of the view which I take as to the trust sought to be created; and I only pass upon the question because it was one of the matters raised before me in the argument and in the briefs.

[1] The Attorney General joins with the attorney for the heirs at law and next of kin in his view that the trust sought to be created by the sixth and seventh paragraphs of said will is invalid, and, after carefully examining the matter, I have arrived at the same conclusion. The accumulation provided for in said paragraphs having been held invalid as above, there would be nothing from which the trustees could make any payments, except the principal of said fund, and they are only authorized to make such payments as in their discretion are necessary to maintain the next of kin of the testatrix and their descendants in the same station of life in which they should be at the time of the testatrix's death, and to secure for them such education, culture and relief, in time of emergency, as may seem to said trustees fitting to their station in life. In other words, if the testatrix's next of kin and their descendants should, in the opinion of the trustees, be in the same station of life and no emergency arise such as is mentioned in the said clause, then no payments should be made by them and none are provided for. Still further, no matter what the station of life of the next of kin and the descendants of said testatrix should be, unless the trustees saw fit to make such payments, they could not be compelled to do so, for the last clause of the seventh paragraph provides, "and it is my express will and direction that the making of such payments, if any, be left in all things to the absolute and uncontrolled discretion of my said trustees." From the very language just quoted, it clearly appears that the testatrix had in mind that possibly no pay-

ments of any kind would be made, otherwise the use of the words "if any" would have no force whatever. It must be borne in mind in this connection, also, that the next of kin of the testatrix are the persons who claim this trust to be void, although they are the persons, if any, who would be benefited by it if it was held to be good. "The existence of a valid trust, capable of enforcement, is essential to enable one claiming to hold as trustee to withhold the property from the legal representatives of the alleged donor. The absence of a defined beneficiary, entitled to enforce its execution is, as a general rule, a fatal objection to the validity of a testamentary trust. A power given to executors to select the beneficiary does not obviate the objection, unless the persons or corporations from among whom the selection is to be made are so defined and limited that a court of equity would have power to enforce the execution of the trust, or in default of a selection to decree an equal distribution among all the beneficiaries." Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305, 2 Am. St. Rep. 420.

This has been held in many other cases, but by none of them has the law been changed, that there must be some one who could enforce the payments under the trust; and in this case it is only too plain that no one could come into court and enforce the payment of a single dollar by the trustees unless they saw fit to do so, because it is left to their uncontrolled discretion in any way and they are enabled to make or refuse to make payments simply in accordance with how they may decide; and, for this reason, I consider that the trust sought to be established by paragraphs sixth and seventh of the will is absolutely void, and the property attempted to be disposed of by these paragraphs must be treated as a portion of the residuary estate and disposed of in accordance with the ninth paragraph of said will. The trust attempted to be created by the ninth paragraph, as is conceded by all parties to the proceeding, can only be upheld if it is shown to be a trust for charitable uses.

The attorney for the next of kin contends that, even if this is held to be a charitable trust, even then it is void, because the indefiniteness of the beneficiaries is not of a character protected by the statute. In this I must disagree with him and hold that, if in all other respects this trust was valid, it would not be void on account of the indefiniteness of the beneficiaries; and I think it is exactly a case that the statute of 1893, as re-enacted by the Laws of 1909, c. 45, § 12, was passed to uphold. I will not discuss this matter further, because it will not be important in view of the conclusion which I have reached.

There have been many cases decided as to whether or not a trust attempted to be created in a will was valid or not as a charitable trust, but the recent decision of the Court of Appeals of this state in Matter of Shattuck, 193 N. Y. 446, 452, 86 N. E. 455, 456, shows clearly that the attempted trust in this case cannot be sustained; and the court says:

"The intention of the Legislature in passing the act of 1893 was to save to the public charitable gifts made in trust to uncertain and indefinite beneficiaries. Gifts for the benefit of private institutions or individuals were not intended to be included within its provisions. The meaning of a charitable use or purpose in England is stated by Tudor on Charities and Mortmain (4th

Ed.) p. 37, as follows: 'In the first place, it may be laid down as a universal rule that the law recognizes no purpose as charitable unless it is of a public character. That is to say, a purpose must, in order to be charitable, be directed to the benefit of the community, or a section of the community.' * * * · It is defined by Pomeroy in 2 Equity Jurisprudence (2d Ed.) § 1019, as follows: 'In order that a trust may be charitable, the gift must be for the benefit of such an indefinite class of persons that the charity is really a public and not a mere private benefaction.' "

And at page 454 of 193 N. Y., at page 457 of 86 N. E.:

"It is undoubtedly the law in most states that, where property is given to trustees with power to apply it either to uses which are or those which are not within the classes included in charities, the whole must fail so far as the application of the peculiar doctrines of charitable uses is concerned. Every charitable gift must be actually dispensed by some individual and ultimately substantially every charitable fund must be applied to the relief of individual need, but the trust cannot for the reason stated be made for individual beneficiaries as such. The general purpose of the trust must be the well being of humanity or some specified but indefinite class or part thereof. * * * In view of the quite universal rule that charitable uses and public uses are synonymous, and the title of the act, which is, 'An act to regulate gifts for charitable purposes,' we repeat that the Legislature intended to preserve charitable gifts made in trust to uncertain and indefinite beneficiaries, but did not intend to include in the purpose of the act gifts to private institutions or individuals."

[2] In the case at bar the trustees can in the administration of this trust have the absolute discretion to disburse the principal or interest, or both, in their discretion, to provide among other things, education, general or specific, to such persons as they shall select as being in need of the same; and this must mean that they have the power to contemplate instruction along some special line as opposed to general school training, and not, therefore, necessarily charitable. Under this attempted trust, these trustees have the power to furnish "other financial aid as may seem fitting and proper to them."

[3] I cannot conceive of how this can be necessarily a charitable trust, because the trustees are not obliged to furnish financial aid to poor persons only, because the phrase "in need" as used in the ninth paragraph refers to the exercise of the trustees' discretion and not to the condition of the beneficiary, and the discretion of the trustees is not limited in any way. I might go on and consider the difficulties which the trustees would have in carrying out this trust, if it were held to be valid, and the peculiar persons that would be entitled to its benefits, if attention were given to the clause setting forth who is to be preferred; but I consider this entirely unnecessary, as I believe I have given reasons why as a matter of law this trust should be held invalid.

By so doing, practically the whole estate of this testatrix passes to her next of kin, and, as the intention of the testatrix in the first trust was, if it was anything, to provide for them, and the intention of the second trust is so indefinite, I consider the trustees will be relieved from an arduous task and probably the best disposition of the testatrix's estate made by this decision.

Findings in accordance with this decision can be prepared and settled on notice, and a decree will be entered in accordance therewith.

Decreed accordingly.