### In re TURNER'S WILL.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

WILLS (§ 525*)—CONSTRUCTION.

Testator left no children, but left seven nephews and nieces, five of whom were the children of one brother, and also left a grandniece who was a child of a deceased son of the same brother. At the time of making his will, testator did not know the names or number of this brother's children, or that the one son had died. *Held* that, under a provision of his will that his estate should go to a certain nephew, one share, a certain niece, one share, and to each of the children of a certain brother, "one share, to be divided equally among my said nieces and nephews, share and share alike," and that the share of any dying with issue surviving should be paid to such issue, the nephews, nieces, and grandniece were each entitled to an equal one-eighth share of the estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1129–1139; Dec. Dig. § 525.*]

Robson and Foote, JJ., dissenting.

Appeal from Surrogate's Court, Monroe County.

Probate of the last will and testament of Charles E. Turner. From a decree admitting to probate, Byron J. Tillman appeals. Affirmed.

The proceeding was commenced on the 20th day of July, 1911, in the Surrogate's Court of Monroe county, a petition being filed by the Surety Trust Company of Rochester asking that two instruments in writing bearing date February 28, 1910, and May 27, 1910, be, respectively, admitted to probate as the last will and testament and codicil thereto of Charles E. Turner, deceased. There is practically no question but that the will should be admitted to probate; practically the only contention being whether or not the eleventh clause of such will was properly construed by the surrogate.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

John T. Ryan, of Buffalo, for appellant.
M. H. McMath, of Rochester, for respondent Turner.
Leonard B. Bacon, of Rochester, for respondent executor.

McLENNAN, P. J. It appears substantially without contradiction that the testator was possessed of property of the value of about $45,-000 to $50,000; that he left no children or any other relatives or next of kin to whom his bounty should extend. The evidence indicates that he knew little concerning his relatives or next of kin. On the 28th day of February, 1910, he made the will which is the subject of this controversy. By such will he gave to his niece, Grace Joy, a diamond stud; to the oldest living son of his brother George, a ring; to the second oldest living son of his brother George, another ring and watch; and to six others, not relatives, as many specific legacies. By the will the testator distributed the residue of the estate according to the eleventh paragraph, which reads as follows:

"Eleventh: All the rest, residue and reversion of my estate, both real and personal, I give, devise and bequeath as follows:—to my nephew, Byron J. Tillman of Buffalo, N. Y., one share; to my niece, Grace Joy of Boise, Idaho, one share; and to each of the children of my brother, George Turner, one

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

share, to be divided equally among my said nieces and nephews, share and share alike. I direct that the share of any dying with issue surviving shall be paid to such issue and that the share of any dying without issue shall be equally divided among the survivors."

There were at the time of testator's death the following nephews and nieces, beneficiaries of this paragraph: George W. Turner, Fred Turner, Charles C. Turner, Belle (Turner) Shumway, and Helen M. (Turner) Lucas, all children of testator's brother George, Grace Joy, and Byron J. Tillman, the appellant, who has been confined for some years in the Buffalo State Hospital. There was also a grandniece, Blanche Turner, the only child of Frank Turner, another son of testator's brother George, and this Frank was dead at the time of the execution of the will, but there is no evidence that testator knew of Frank's death. The evidence shows that he knew very little about George's children, having had no answer to an advertisement for them.

Upon all the facts the learned surrogate construed the eleventh paragraph to mean that the residue of the estate should be divided into eight parts, one to Grace Joy, one to Byron J. Tillman, one to each of the five surviving children of George Turner, and one to Blanche, the representative and only child of the dead Frank Turner. We think the learned surrogate was right in deciding as he did; that entirely independent of punctuation, upon which reliance is placed by the appellant, it seems absolutely clear that the testator intended that the residuum of his estate should be distributed as the learned surrogate decreed. It follows, therefore, that the decree of the Surrogate's Court should be affirmed, with costs payable by the estate.

Decree affirmed, with costs to appellant and with separate bills of costs to the respondents, payable out of the estate. All concur, except ROBSON and FOOTE, JJ., who dissent in a memorandum by ROBSON, J.

ROBSON, J. (dissenting). The eleventh clause of the will gives (as the surrogate has held) one share of the residue of testator's property to each of the children of his brother, George Turner. So construed, the will designated George's children as a class to each of whom a share was given. The further direction of this clause is that the share of any legatee designated therein is to be paid to the issue of such legatee in the event of his dying. Frank Turner was a son of George Turner, and had died before testator's death leaving one child, the respondent, Blanche Turner. No share of the residue was given by the will to Frank Turner, for he was not living at the time the will was made. Therefore, as to his issue, there was no share to which the direction to pay to the issue of a legatee who might have died could apply. For that reason Blanche Turner is not entitled to any share in the residue of the estate. Pimel v. Betjemann as Ex'r, etc., 183 N. Y. 194, 199, 76 N. E. 157, 2 L. R. A. (N. S.) 580, 5 Ann. Cas. 239.

FOOTE, J., concurred, and also on the ground that the testator intended that the residue should be divided into thirds, instead of eighths.