### BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9837.

Circuit Court of Appeals, Ninth Circuit.

Feb. 21, 1942.

J. W. Radil, F. J. Kilmartin, R. M. Sims, Jr., and Knight, Boland & Riordan, all of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Gerald L. Wallace, Bernard Chertcoff, and Benjamin M. Brodsky, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is a review of an order of the United States Board of Tax Appeals determining certain deficiencies in the income taxes of appellant trustee, hereinafter called taxpayer, for the tax years 1935 and 1936.

(1) With reference to the tax year 1935, the Board held the Commissioner of Internal Revenue had properly computed a proposed deficiency assessment in disallowing a deduction from gross income of a capital gain realized from the sale of certain securities in the corpus of the taxpayer's trust estate. This capital gain, it is claimed by the taxpayer, is allowable as such a deduction because, "pursuant to the terms of the * * * deed creating the trust," it had been "permanently set aside" "to be used exclusively" for certain charities having a residuary interest in the trust estate, as provided in section 162(a) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Code, § 162(a).[1] It is to be noted that it is this particular part of the income of 1935 which the taxpayer must show is "permanently set aside" from the other assets of the trust estate for this "exclusive" charitable use.

In the tax year 1935 certain securities, a part of the corpus of the trust estate, had appreciated in value. This gain, amounting to $32,785.40, was realized by a sale of the securities for cash. A part, if not all, of the cash was reinvested in 1935 in other securities. The taxpayer concedes that at least $29,714.78 was so invested, hence making determinable the future use to which the securities might be put by the taxpayer, "pursuant to the terms of the * * * deed creating the trust."

It is agreed that the California law controls in construing the trust instrument, and that under that law this gain remains a part of the corpus of the trust estate. However, the gain is nonetheless an identified entity because a part of the corpus. Taxpayer concedes that it is subject to the federal income tax unless the facts adduced show that it falls within the deduction for charitable purposes of section 162(a). In the proceeding before the Board the taxpayer had the burden of proof that the taxpayer was entitled to make the deduction. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

The taxpayer is the trustee of the John and Pauline Tonningsen Trust created August 7, 1930. The trust names John Tonningsen as the first trustor and Pauline E. Tonningsen, his wife, as the second trustor. Under the terms of the trust the net income was payable to the first trustor during his lifetime. At his death the trust was to become irrevocable and the net income was to be paid to the second trustor.

On the death of the survivor of John and Pauline Tonningsen the trustee was directed to pay

---

[1] "§ 162. Net income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit; * * *."

"(a) Out of the income of the trust fund and estate, if that be sufficient, or out of the principal thereof, if necessary, * * * the costs and expenses of the surviving Trustor's last illness and of his or her funeral and burial, unless other provision shall have been made therefor, and the inheritance tax upon all distributive shares of or interests in the trust fund and estate, if any be due, and any Federal Estate Tax due upon the whole thereof, and the costs and expenses of the trust, * * *."

(b) Specific gifts to individuals amounting to $104,000 which were made a charge upon both the undistributed income and the principal of the trust funds; (c) annuities aggregating $600 per month; (d) all of the net income not required for any of the foregoing purposes was to be paid to six organizations qualifying as charitable organizations under the applicable provisions of the revenue act.

The trust estate was composed of real and personal property and yielded net income as follows:

| Year | Amount |
|---|---|
| 1931 | $70,970.00 |
| 1932 | 73,984.18 |
| 1933 | 47,693.67 |
| 1934 | 45,571.58 |
| 1935 | 45,938.85 |

John Tonningsen died on November 28, 1933. At the time of her husband's death, Pauline Tonningsen was 81 years old. She was paralyzed and confined to her bed and wheel chair. This condition continued until the time of her own death on January 25, 1936.

In determining whether the securities in which the reinvestment of the gain was made were permanently set aside for any purpose, we must consider the uses to which the trust deed permitted the taxpayer to put them, looking forward from the end of the tax year 1935. Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647.

At the end of that year, Mrs. Tonningsen was over 83 years of age, paralyzed, with the seeds of death in her, as shown by her demise twenty-five days later. All the trust income had been paid her or was payable to her or her estate. It was at least a reasonable possibility on December 31, 1935, that she would die in the succeeding year, receiving the income of the trust estate to that time. There would then fall due for payment the $104,000 in gifts. This $104,000 obligation then due was a charge upon both undistributed income and the principal of the trust estate. At no time had the income of the estate amounted to $74,000 per annum. The average annual income for the last three years amounted to less than $47,000, and there was a prior charge on income of $600 per month.

The trustee had a discretion in administering the estate, either to pay the whole amount of the gifts from current income or sell the stock and other assets in the corpus and pay them at once. The taxpayer has not maintained its burden nor shown at all that on December 31, 1935, it was its fixed and binding intention to pay them from income, even if this were capable of proof. On the contrary, the taxpayer might find that it was a wise business choice to sell the securities and pay off the gifts, in which event, instead of being "used exclusively" for the benefit of the charities, its direct use is for a non-charitable purpose. With this option in their use, it cannot be said the capital gain invested in the securities was "permanently set aside" for any purpose.

It could be argued that it is a matter of indifference whether the stock in which the capital gain was invested be sold to pay off the gifts or retained to yield income to the charities, for, if so sold to pay off the gifts, the charities would receive an added increased income in succeeding years because to that extent of the sale the income was not used to pay the gifts.

However, assuming this thesis, the problem to be determined by the Commissioner, and ultimately by the Board, would be the amount of the deduction due to the enhancement if the taxpayer choose to use the stock to discharge the gifts, instead of paying them off out of income. On this question of amount, the burden of proof is again on the taxpayer. It is not enough to show that the Commissioner's proposed assessment is for too large an amount. Before the Board the taxpayer's burden is to show the actual amount of the deduction. Cf. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 72 L.Ed. 667.

If the stock be sold to pay the gifts, the ultimate enhancement to the charities well may be a greater or a less amount than if it remain in the corpus of the estate to yield future income for them. On this issue there is no evidence upon which the Board could make any finding, and hence the taxpayer has failed to maintain its

burden of proof as to the amount of its deduction.

A new contention regarding the capital gain is raised for the first time in the briefs here. It is that Mrs. Tonningsen is in fact one of the grantors of the trust within section 167 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 167, and having such control of the trust estate that she and not the appellant trustee should be deemed the one taxable for the capital gain in the sale of the assets of the corpus of the trust.

This contention was not made before the Board of Tax Appeals. It is not stated in the agreed statement of questions here. It is not mentioned in the statement of points to be relied upon, to which the hearing before us is to be confined by our rule 19 (6). No excuse is given for the obvious laches in raising the contention more than five years after the time for filing Mrs. Tonningsen's tax return for 1935, during which time the United States well may have been barred from assessing or suing for this item of Mrs. Tonningsen's income for 1935. Revenue Act 1934, section 275 (a) and (c), 26 U.S.C.A. Int. Rev. Code, § 275(a, c). The taxpayer cannot so mend its hold here.

The decision of the Board on the deficiency in the tax year 1935 is affirmed.

(2) For the tax year 1936 the Board sustained the Commissioner in disallowing a claimed deduction of the amount of the entire current income of the trust and allowed the deduction only for the amount of the income, less a certain estate tax on the estate of Mr. Tonningsen and certain attorneys' fees incurred in connection with settling a controversy over the estate tax.

Payments of the estate tax and of the attorneys' fees were made by taxpayer, the former being charged to corpus by the taxpayer. An amount equal to the income of the trust was paid by the taxpayer as such to the charitable organizations. The latter payment is claimed as a deduction in the full amount under section 162(a). It is the Commissioner's position in disallowing that deduction that the payments of estate tax and of attorneys' fees were required by the trust instrument and were actually payments out of income and to the extent thereof reduced the current income available for distribution to the charities, so that in effect what was paid to them was in reality not income but corpus and hence not deductible.

The deduction which is permitted by section 162(a) is of "any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid" for charitable purposes. If, as the Commissioner contends, the parts of the gross income in question were not, pursuant to the deed creating the trust, paid to the charities, the deduction would not be available. The issue, therefore, narrows to the question whether the trust instrument provided that the payments of estate taxes and attorneys' fees should be made from income or whether it directed that the income should be used for the payments to charity.

According to the deed of trust the payments to the charitable institutions were to be the net income "not required for any of the purposes aforesaid." This is provided by article vii (d). Article vii (a) requires the trustee "out of the income of the trust fund and estate, if that be sufficient, or out of the principal thereof, if necessary," to pay "the inheritance tax upon the distributive shares of or interests in the trust fund and estate, if any be due, and any Federal estate tax due upon the whole thereof and the costs and expenses of the trust."

These provisions appear to be so clear as to offer small room for construction. The income of the trust for the year 1936 was sufficient to pay the estate taxes and attorneys' fees in question. The trust deed requires that under those circumstances they be paid out of that income. It provides for the distribution to the charities of only the income not so required, thus precluding any distribution to them "pursuant to the terms of the will or deed creating the trust" of income which had already been used pursuant to those terms for other purposes. The deduction in question accordingly finds no support in section 162(a).

With reference to the attorneys' fees, the taxpayer also claims, here for the first time, that they were deductible because at the time the fees were paid all the obligations of the trust estate prior to the charities had been discharged, save the $7,200 of annuities payable to various persons, and that the services rendered by the attorneys were for a charitable purpose—that is, for the benefit of the estate whose income above the $7,200 a year was payable to the charities. Among other things, this contention places on the tax-

payer the burden of proof that the future income of the estate would certainly be in excess of that required to discharge the annuities and, if in excess, to what extent the attorneys' services were apportionable to the income of the annuities and that of the charities.

To sustain that burden taxpayer would be required to show the value and character of the properties of the corpus as to their future income producing power, looking forward from the end of the tax year 1936, the life expectancy of the annuitants and other factors existing at that date. That the estate had a large value several years before and a large income in the past does not determine that the properties of the trust estate were of a character to produce such an income in the future. No finding on this issue was made by the Board, because no such contention was there made as to the attorneys' fees, nor was any evidence offered on which it could be based.

The order of the Board is affirmed.

Affirmed.