In the Matter of the Estate of WALTER H. BUELL, Deceased.

Surrogate's Court, Westchester County, August 29, 1946.

*Holland & Armstrong* for Edith M. Buell and another, as executors of Walter H. Buell, deceased, appellants.

*Hamilton McInnes* for State Tax Commission.

GRIFFITHS, S. This is an appeal from a *pro forma* order dated September 20, 1945, fixing the estate tax in the sum of $991. The appellant executors assert as error the failure of the official appraiser to allow as a deduction the amount of a remainder interest which is given to an educational institution.

The decedent died November 30, 1944, a resident of this State. His will dated December 18, 1942, was admitted to probate in this court on February 9, 1945, and on the same date letters testamentary were issued to Edith M. Buell and the Bronxville Trust Company, the executors named in the will.

After providing for a gift of furniture, clothing and personal effects to his sister Edith M. Buell, the testator directs that his entire residuary estate be held in trust for the benefit of his said sister, Edith M. Buell, '' as long as she shall live.'' Upon her death the trustees are directed to make certain cash distributions to named relatives and to pay and transfer the balance of such remainder estate to the Hotchkiss School at Lakeville, Connecticut, of which the decedent stated in his will he was the headmaster, emeritus.

In addition to her interest under said trust, testator authorized his executors and trustees to grant to the said Edith M. Buell '' the use, rent free, of the house located at 15 Prescott Avenue, Bronxville, New York, as long as she desires, and at her request to pay taxes levied against this property from the principal of my estate.''

The will names the said Edith M. Buell and the Bronxville Trust Company as cotrustees as well as coexecutors.

The last or Tenth paragraph of the will reads as follows: '' Tenth: Should the welfare of my sister, Edith M. Buell, a beneficiary in the trust hereinabove created, require help in excess of income available, I expressly authorize my Trustees in their sole discretion to use a portion of the principal for such beneficiary.''

There being no dispute as to valuations or other factual matters pertinent to the fixation of the estate tax, the sole question presented for determination is whether or not the estate is entitled to a claimed deduction in the sum of $63,619.14, representing the estimated value of the remainder interest allegedly distributable to the Hotchkiss School.

The controlling statute is subdivision 3 of section 249-s, of article 10-C of the Tax Law, the provisions of which although not identical are similar in both form and purpose to the provisions of the comparable Federal estate tax laws. It is well settled that in determining the effect of the provisions of our Tax Law weight should be given to the construction placed by the Federal tribunals upon analogous provisions in the Federal statute " for the purpose of maintaining the uniformity of administration of the Tax Law  *  *  *  which the Legislature has sought to achieve." (*Matter of Weiden,* 263 N. Y. 107, 110. See, also, *Matter of Cregan,* 275 N. Y. 337, 341, and *Matter of Russell,* 294 N. Y. 99, 103.)

In determining the question of charitable deductions the test to be applied is " whether the bequests to the charities have, as of the testator's death, a ' presently ascertainable ' value or, put another way  *  *  *  whether, as of that time, the extent to which the widow would divert the corpus from the charities could be measured accurately." (*Merchants Nat. Bank of Boston* v. *Commissioner of Internal Revenue,* 320 U. S. 256, 259.) By its prior decision in *Ithaca Trust Co.* v. *United States* (279 U. S. 151) the Supreme Court had determined that a deduction may be made where the invasion of principal is restricted to an amount necessary to maintain the life beneficiary " in as much comfort as she now enjoys." In so holding the court stated at page 154: " There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

The last pronouncement by the Supreme Court of the United States, with respect to the question at issue, is its decision in the *Merchants Bank* case (*supra,* p. 258). There the will authorized the trustee to invade the corpus " at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund  *  *  *  my said Trustee shall exercise its discretion with liberality to my said wife, and con-

sider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust.''

The court summarized the established guiding principles on page 261 as follows: '' For a deduction under § 303 (a) (3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. *Cf. Humes* v. *United States,* 276 U. S. 487, 494. Only where the conditions on which the extent or invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. *Cf. Bank of American Assn.* v. *Commissioner,* 126 F. 2d 48 (C. C. A.).''

In holding that the estate could not sustain such burden imposed upon it by law, the court said: '' Under this will the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life.'' In so holding, however, it is significant that the court emphasized the effect of the use of the word '' happiness '' and the express direction to the trustee to exercise its discretion '' with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust.''

An analysis of the decisions of both the Federal and State courts shows that the statutory deduction is allowed for '' the transfer of estates in expectancy as well as estates in possession ''; that the deduction is not confined to transfers of expectant estates '' which are not dependent upon *any* contingency '' and that the deduction must be allowed '' for the ' value ' of any estate, whether in possession or expectant, when that ' value ' can be determined with reasonable certainty upon the basis of known data.'' (*Matter of Cregan,* 275 N. Y. 337, 346, *supra.*) The Treasury regulations also clearly provide for the allowance of deductions under such circumstances.

It may be said, therefore, that the mere possibility of invasion of the corpus for the benefit of the income beneficiary is not enough to defeat the deduction as a matter of law; it must also

appear that "the standards by which the extent of permissible diversion of corpus is to be measured embrace factors which cannot be accounted for accurately by reliable statistical data and techniques." (*Merchants Nat. Bank of Boston* v. *Commissioner of Internal Revenue, supra*, pp. 260–261.) As was observed by the late Judge LEHMAN in *Matter of Cregan* (*supra*, p. 346) it is difficult, however, "to determine in every case upon which side of the line an asserted exemption or deduction falls." An analysis of the decisions rendered by the Tax Court and by the Circuit Courts of Appeal after the Supreme Court handed down its decision in the *Merchants Bank* case (*supra*) verify this observation.

In the following cases in which somewhat comparable directions were involved the courts held that the words employed provided a fixed standard capable of measurement and allowed the charitable deductions: "Accident, illness, or other unusual circumstances" (*Commissioner of Internal Revenue* v. *Bank of America Nat. Trust & Sav. Assn.*, 133 F. 2d 753 [C. C. A. 9th]); "Best interests" (*Commissioner of Internal Revenue* v. *Robertson's Estate*, 141 F. 2d 855 [C. C. A. 4th]); "Sickness, accident, want or other emergency"·(*Commissioner of Internal Revenue* v. *Wells Fargo Bank & Union Trust Co.*, 145 F. 2d 130 [C. C. A. 9th, 1944]); "Comfort and support" (*Estate of Jack* v. *Commissioner of Internal Revenue*, 6 U. S. T. C. 241 [1946]). Opposite results were reached in the following cases: "Comfort and pleasure" (*Industrial Trust Co.* v. *Commissioner of Internal Revenue*, 151 F. 2d 592 [C. C. A. 1st, 1945]); "Properly care for, and maintain" (*Estate of Holmes* v. *Commissioner of Internal Revenue*, 5 U. S. T. C. 1289 [1945]); "For the use and benefit of my said wife * * * during her lifetime" (*Estate of Cutler* v. *Commissioner of Internal Revenue* 5 U. S. T. C. 1304 [1945]); "Illness, accident or other unforseen emergency" (*Estate of deCastro* v. *Commissioner of Internal Revenue*, 155 F. 2d 254 [C. C. A. 2d, 1946] certiorari denied, 329 U. S. 727).

That diverse results were reached by the Federal courts in the above decisions does not necessarily indicate a real conflict between the respective tribunals. Although precedents are helpful aids in construing wills, the intent of a testator must in each case be sought for in the language of the instrument itself read as a whole in the light of attendant circumstances. (*Matter of Crespi*, 158 Misc. 383, and cases cited; 1 Davids on New York Law of Wills, § 457.) Here the extent of the inva-

sion of principal, if any, depends upon the meaning and effect of the word " welfare ". There being no other provision in the will, and no proof having been adduced indicating that said word was used in a different sense, it will be presumed to have been employed in its ordinary and commonly accepted meaning. (*Matter of Underhill,* 176 Misc. 737.) In order to discover the import of a word or term, it is proper to refer to the works of lexicographers. (*Matter of Turner,* 208 N. Y. 261, modfg. 152 App. Div. 231; *Matter of Robinson,* 203 N. Y. 380, modfg. 145 App. Div. 925, which mod. 71 Misc. 87; *Kinkele* v. *Wilson,* 151 N. Y. 269, revg. 9 Misc. 139.) " Welfare " is defined as " The state or condition of faring well; exemption from pain or discomfort; prosperity." (Funk & Wagnalls New Standard Dictionary, 1944.) Also, as " State of faring, or doing well; state or condition in regard to well-being; esp., condition of health, happiness, prosperity, or the like; negatively, exemption from evil or calamity; as, the *welfare* of troops in the field." (Webster's New International Dictionary [1941; 2d ed.] unabridged.) By comparison, " happiness " is defined as: " (1) the pleasurable experience that springs from the possession of good [so in the original], the gratification of the desires, or relief from pain or evil; * * * 2. A state of being more or less permanent, in which a large measure or the full complement of satisfaction, especially of the higher intellectual and moral kinds, is experienced; a state of felicity; blessedness; as, the happiness of heaven * * * 3. Good fortune; luck; prosperity." (Funk & Wagnalls New Standard Dictionary, 1944.) The same authority gives the following synonyms for happiness: " blessedness, bliss, comfort, delight, enjoyment, felicity, gladness, joy, pleasure, rejoicing, satisfaction, triumph." Accepting such definitions of the respective words " happiness " and " welfare ", it is apparent that the former pertains primarily to a state of mind, which may or may not have any relationship to the material things of life. The latter word, however, may be said to pertain primarily to those material things of life having a relation to one's physical well-being and comfort which are dependent, under our economic system, upon the individual's financial resources. That the ordinary and commonly accepted meaning of the word " welfare " is much narrower than " happiness " is apparent. Furthermore, the emphasis placed upon the use of the word " happiness " in the *Merchants Bank* decision (*supra*) and its failure to allude to the word " welfare " is some indication that the use of the former and not the latter subjected the charitable gift to the

uncertainty requiring a disallowance of the claimed deduction.

In employing the word " welfare " I hold that the testator intended to provide for the physical comfort and well-being of his sister; that he intended to secure to her a continuance of those material things of life to which she had been accustomed while he was living. Such interpretation of the direction for invasion of principal brings the instant case within the application of and is governed by the *Ithaca Trust Company* case (*supra*), namely that the invasion of principal is restricted by a fixed standard based on the sister's prior way of life. That the testator so intended is further evidenced by the direction that principal be invaded, provided the income beneficiary require help for the stated purpose " in excess of income available." It would follow that the purposes for which the trustees under this will might invade principal for the benefit of the income beneficiary do not fall within the category to which the Supreme Court objected in the *Merchant's Bank* case (*supra,* p. 262) that they " do not lend themselves to reliable prediction." A determination as to the amount of the deduction, if any, will necessarily have to be deferred until evidence with respect to the financial resources of the income beneficiary and other relevant facts has been offered.

Although statements with respect to the sister's financial situation and related matters are set forth in the briefs, no proof has been adduced to establish such facts. Since the burden of proof is upon the executor to establish that the amounts which will either be expended for the benefit of the income beneficiary, or ultimately reach the remainderman, are accurately calculable as of the date of death of the testator (*Merchants Nat. Bank of Boston* v. *Commissioner of Internal Revenue, supra*) the matter will be added to the tax calendar of this court for September 10, 1946, at which time a date for a hearing to be had before the Surrogate will be fixed. On such hearing the executors will be afforded the opportunity of offering such proof as may be relevant to the question here involved.

Settle order and proceed accordingly.