### BLODGET et al. v. DELANEY.
### Civ. A. No. 51-161.

United States District Court
D. Massachusetts.

May 26, 1952.

Bailey Aldrich and John Dane, Jr., of Choate, Hall & Stewart, Boston, Mass., for plaintiffs.

George F. Garrity, U. S. Atty., Philip T. Jones, Asst. U. S. Atty., Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this case plaintiff sues for a refund of estate taxes in the amount of $148,291.49 plus interest, which sum it claims was illegally collected by the government. The action stems from a determination by the Commissioner that the amount of $395,377.-54, representing a remainder interest of three-quarters of the residue left in trust under the will of Courtenay Guild, did not constitute an allowable deduction under § 812(d) of the Internal Revenue Code, 26 U.S.C.A. § 812(d), because the remainder interest could not be definitely ascertained as of the date of decedent's death due to a power in the trustees to invade principal for the benefit of the life tenant. The paragraph of decedent's will which is in dispute in this case directed the trustees to pay over the net income from the trust res to decedent's sister, Sarah L. Guild, quarterly or oftener in the trustees' discretion for the period of her natural life, and "also to pay from the principal any amount in their discretion for her comfort and welfare". There was a remainder over to certain specified charities.

In the plaintiff's amended complaint it is alleged, among other things, that Sarah L. Guild, the life tenant, was born in 1862; that at the date of the execution of the will and at the date of the decedent's death she was almost totally blind; that her activities had for many years followed a definite and rigid routine and her future needs and expenses were capable of reasonably accurate and reliable calculation; and finally that her anticipated income from the trust and from about $500,000 owned by her outright was also capable of reasonably accurate calculation.

This case is governed by the answer to the question "whether the bequests to the charities had, as of the date of the testator's death, a presently ascertainable value". This in turn depends on whether as of that time, the extent to which the sister would divert the corpus from the charities could be measured accurately. See Merchants Nat. Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 111, 88 L.Ed. 35. In that case the court set up the following criterion, which is controlling in this case: "Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable." "For a deduction under § 303(a) (3) to be allowed", says the court, "Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient." The standard must be one "fixed in fact and capable of being stated in definite terms of money." See also Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. In the Merchants Nat. Bank case the court disallowed the deduction where the testamentary disposition authorized the trustee to invade the corpus for the comfort, support, maintenance and happiness of testator's wife. In the Ithaca Trust Co. case the testator's wife was given authority to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." The court held that the standard was fixed in fact and capable of being stated in definite terms of money and consequently it allowed the deduction for the charities.

We are called upon to apply the legal principles mentioned above to the facts of this case, or more specifically stated, to decide whether the word "welfare" contained in the testator's will provides a sufficiently definite standard to ascertain what the size of the gift which the charities would ultimately receive would be. The word "welfare" is a rather general term. See Estate of Albert E. Nettleton, 4 T.C. 987, 993, a case involving some of the issues present here, where the court said the term welfare "has a broad connotation and may denote a condition of happiness or prosperity". On the other hand, see In re Buell's Estate, 198 Misc. 358, 66 N.Y.S.2d 180, 185, where the court construes welfare to "pertain primarily to those material things of life having a relation to one's physical well-being and comfort which are dependent, under our economic system, upon the individual's financial resources".

 Plaintiffs here contend that the use of the word welfare by the testator restricted the gift to the particular standard of living to which his sister had been accustomed. If that were so, then this case would be governed by the Ithaca Trust Co. case. In the final analysis, however, Massachusetts law is controlling on the meaning to be assigned to the term welfare as it appears in decedent's will. Gammons v. Hassett, 1 Cir., 121 F.2d 229; Newton Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 160 F.2d 175. Under Massachusetts law the extent of a beneficiary's interest is determined by the intention of the testator, Gammons v. Hassett, supra. That intention must be ascertained by a reading of the will in the light of the circumstances under which it was executed, Hill v. Aldrich, 326 Mass. 630, 96 N.E.2d 147.

 In this case the testator made generous provision for his sister, that is the yearly income from a sum in excess of $395,000. It is alleged by the plaintiff that Sarah Guild had substantial independent means. Miss Guild was an elderly woman, almost totally blind, with moderate needs and requirements. Under these circumstances it seems that it must have been apparent to the testator that his sister's independent income and the income from this trust were in excess of that required to maintain her existing standard of living. Consequently when he used the word "welfare" he must have intended to allow her the use of sums for purposes over and above her customary needs and wants. See Gammons v. Hassett, cited supra. Just what these purposes were and how much of the principal of the trust could be diverted for their satisfaction, we cannot say with that degree of accuracy which the law requires in cases of this sort. It is true that in many of the cases denying deductions words of greater latitude than "welfare" were used, such as the words pleasure, desire and happiness, and it is also true that a court of equity might disallow certain expenditures from principal under the terms of this trust as being in excess of the authority contained therein. But even "granting that this power of invasion does not bestow an unrestricted right to consume the principal, we are still unable to make more than an inaccurate guess at the extent of the power of invasion", c.f. Newton Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 160 F.2d 175, at pages 179, 180. In the case just cited the disposition allowed invasion for the use and benefit of testator's wife. The court in holding that the power of invasion was too indefinite said, 160 F.2d at page 179, "the term 'benefit' has been said to mean 'whatever promotes welfare; advantage, profit.'"

In this case the court need not pass upon the question of the likelihood of invasion of the corpus if it finds that the language of the power is too broad to admit of reliable valuation. These are two separate questions and a determination by the court that the power of invasion is too indefinite precludes the necessity of its going into the question of the remoteness or imminence of invasion. See the Newton Trust Co. case supra, 160 F.2d at page 180, and Paul, Federal Estate and Gift Taxation, § 12.26, Supp.1946.

 It is my conclusion that on a view of the facts of the case in a light most favorable to the plaintiff the testamentary provision under consideration here cannot

472

be held to provide for a standard which is fixed in fact and capable of being stated in definite terms of money.

The defendant's motion to dismiss is allowed.