## NATIONAL BANK OF COMMERCE OF SAN ANTONIO v. SCOFIELD.

### No. 12228.

Circuit Court of Appeals.
Fifth Circuit.

July 21, 1948.

Rehearing Denied Sept. 11, 1948.

HUTCHESON, Circuit Judge, dissenting.

———◆———

C. W. Trueheart and John J. Cox, both of San Antonio, Tex., for appellant.

Leland T. Atherton, Sp. Asst. to Atty. Gen., and Theron L. Caudle, Asst. Atty. Gen., and Henry W. Moursund, U. S. Atty., of San Antonio, Tex., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The question here is whether or not the amount of the charitable trust was clearly shown to have been "presently ascertainable" at the time of the death of the settlor and, therefore, within the exception as to estate taxes that would otherwise have been payable. The trustee was in a position analogous to that of a remainderman who, after the expiration of a life estate, would take whatever the life tenant had not consumed. As sympathetic as we are with the generous impulses that prompted the testator in making a bequest to charity of that which remained after the death of his wife, we are, nevertheless, convinced that, at the time of the testator's death, the ascertainment of the amount that would remain was largely a matter of conjecture. The trustees had the right to invade the corpus of the trust estate in order to carry out its duty liberally to provide for the support of the widow,[1] with no standard provided in the will by which such invasion, if any, could have been accurately calculated. In consequence of the inability to ascertain, at the time of testator's death, the amount that would ultimately go to charity, no deduction under the statute and regulations for charitable bequests was allowable. "Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient." Merchants Nat. Bank v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 111, 88 L.Ed. 35.

[1] The pertinent paragraph of the will is as follows: "(d) My said trustee shall liberally provide for my beloved wife, Mary J. Higgins, maintaining her in our home or a location of her choosing, provided with the necessities and comforts in life to which she is accustomed; and my trustee may use such reasonable sums from the principal from time to time as it, in its sole discretion, may deem necessary for the carrying out of the provisions of this paragraph, so long as she may live."

The trustee was required to provide for the wife in "our home or a location of her choosing," and was authorized to exercise "its sole discretion" in providing such home or location, as well as the "necessities and comforts in life" to which she was accustomed.

The uncontrolled discretion of a trustee—the vagaries and vicissitudes that attend an aged widow—are such indeterminate and variable factors that the ancient criterion of "judging the future by the past" should not be applied here as a *formula* for ascertaining, in *praesenti*, the amount that will remain when the discretion, the vagaries, and the vicissitudes have been resolved into tangibility by the widow's death.

 The issue is one of fact,[2] on which the lower Court found against the taxpayer on evidence that supports its finding.

The judgment is affirmed.

HUTCHESON, Circuit Judge (dissenting).

The suit was for the recovery of estate taxes. The claim was that because of the Commissioner's refusal to allow plaintiff to deduct the value of property bequeathed in trust for charitable purposes,[1] the taxes had been overpaid.

The defense was that the trust was created for both a charitable and a private purpose, and the beneficial interest in favor of the former was not "presently ascertainable and hence severable from the interest in favor of the private use".[2]

The district judge, upon evidence which was not in dispute and upon findings[3]

---

[2] Because of the characteristic fullness and clearness with which the facts and issues in this case are stated in the dissenting opinion of Judge Hutcheson, the recital thereof, in this opinion, is eliminated.

[1] "NET ESTATE.

"For the purpose of the tax the value of the net estate shall be determined in the case of a citizen or resident of the United States by deducting from the value of the gross estate—* * *

"(d) Transfers for Public, Charitable, and Religious Uses. The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, device, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return * * *) to or for the use of the United States, * * * or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, * * *." 26 U.S.C.A.Int.Rev.Code, § 812.

[2] Treasury Regulation 105, promulgated under the Internal Revenue Code, provides, in Sec. 81.44 Transfers For Public, Charitable, and Religious Uses:

"* * * If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use. * * *" and in Section 81.46, Conditional bequests: "* * * If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power".

[3] He found, as to the will, that the decedent died testate, leaving a will which, declaring that all his property was community and by the will he was disposing of one-half of it, devised to appellant in trust the half disposed of:

(a) to hold, manage and care for, sell, dispose and convey it for the purpose of paying debts or carrying out the provisions of the will;

(b) to pay decedent's sister $250 in cash and $50 per month during the remainder of her life;

(c) to pay to his niece $200 in cash and $200 per month during the term of her life;

these bequests to be "first paid out of income if sufficient, otherwise out of the principal of my estate".

Then followed clauses (d) and (e). Clause (d) provided:

"My said trustee shall liberally provide for my beloved wife, Mary J. Higgins, maintaining her in our home or a location of her choosing, provided with the necessi-

which may not be disturbed, concluded as matter of fact that the interest of the charitable trust was not presently ascertainable, and upon the authority of Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, and Merchants Nat. Bank v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, as matter of law that the deduction was properly disallowed. So concluding, he gave judgment that the plaintiff take nothing, and this appeal is from that judgment.

Here appellant urges upon us, as it did upon the district judge, that the terms of clause (d) fixed a definite standard within the principle laid down in Ithaca Trust Co., Ex. v. United States, supra, and First National Bank v. Snead, 5 Cir., 24 F.2d 186, and that Merchants National Bank v. Commissioner, supra, is distinguishable.

In support of this insistence, it makes two contentions. One is that the income from the entire community estate, a sum sufficient to pay the sums fixed in clauses (b) and (c), and the $320, reasonably estimated as the amount necessary under clause (d), rather than the income from one-half of it, should be considered as available before invasion of the principal. For this contention it relies upon these facts: that the decedent had handled the entire property, his wife leaving everything to his management; that decedent was careful, cautious and methodical; that he kept complete and accurate accounts of income and outgo; that his wife had made an identical will with the same charities her residuary beneficiaries; and, upon what it says is the reasonable inference, that it must

have been clearly understood by both decedent and his wife, that at her advanced age, 82, she would not need to, nor would she, invade the corpus of the property which was to go to their chosen charities. It relies, too, upon our opinion in Barbour v. Commissioner, 5 Cir., 89 F.2d 474, holding that for the payment of debts the community as a whole must be looked to.

The other contention is that, assuming as matter of law that the income from only the one-half of the community estate devised can be looked to and that the question of the probability and the extent of the invasion of the corpus is to be determined as a question of fact, still the whole body of the facts admits of no other reasonable conclusion than that the decedent's wife would exhaust the income from her one-half of the community before she would make demands upon the trustee which would require it to invade the trust corpus. In support of this view, it cites, as cases dealing with similar situations, Commissioner of Internal Revenue v. Robertson's Estate, 4 Cir., 141 F.2d 855; Commissioner of Internal Revenue v. Bank of America, 9 Cir., 133 F.2d 753; Commissioner of Internal Revenue v. Wells-Fargo Bank & Union Trust Co., 9 Cir., 145 F.2d 130; and In re Martin's Will, 269 N.Y. 305, 199 N.E. 491.

Standing on these two positions it argues that the invasion of the principal was only remotely possible and that it cannot be justly or reasonably said that the interest of the charities was not reasonably ascertainable and severable from the private use.

As to the first point, that as matter of

ties and comforts in life to which she is now accustomed; and my trustee may use such reasonable sums from the principal from time to time as it, in its sole discretion, may deem necessary for the carrying out of the provisions of this paragraph, so long as she may live." Clause (e) provided: that when all of those mentioned in clauses (b), (c), and (d), had passed on, then the remainder of the estate should be divided into two equal parts and delivered to the two named charities. He found, as to the private beneficiaries, that the sister was then 80 years old, the wife, 82, the niece 40, and that within less than six months after decedent's death the wife also died. He found that

the cost of maintaining the wife "with the necessities and comforts in life to which she is accustomed" was about $320 per month, and that the income from the entire estate was approximately $620 and from the estate bequeathed $310 per month. He, therefore, found that to carry out the provisions of the will would require payment of sums largely in excess of the annual income from the devised estate but of an undetermined and indeterminable amount, and that the liberal provisions of Subd. (e) authorizing invasion of the principal made the value of the beneficial interest designed for charity impossible of present ascertainment.

law the income from the whole community estate must be first exhausted before the principal of the half devised could be invaded, we are all in full agreement that it is clearly without merit.

Upon the second point, that as matter of fact there is no real probability that the principal devised would be invaded to any substantial extent and that it ought to have been found that the interest of the charity was presently ascertainable, we are not in accord. As the writer understands it, his associates are of the opinion that the findings are supported by evidence and cannot be set aside as clearly erroneous, and the judgment must be affirmed. The writer is of the contrary opinion. Coming in with no conflict whatever, it is the writer's view that the evidence admits of only one reasonable conclusion, that in favor of the deduction. Indeed, when the facts are viewed as a whole, it seems to me that there is no sound basis whatever for the conclusion that there was any probability that the corpus of the property devised to charity would be invaded for the widow's support. Indeed the consideration that there was any probability that this gentle old lady—she was eighty-two when her husband died and in poor health—after a long life of dependence upon, and trust in, him to handle and to use the income from the whole property so that it would support and take care of them, would go about to hoard her half of the community income so as to invade the corpus of property devised by them both to their favorite charity, seems to me to be as wanting in right reason as it certainly is in charity.

If I stood alone in this view, its rectitude and its conformity with the rules of right reason and sound common sense would sustain me. But I do not stand alone. I am surrounded and supported by a cloud of judicial witnesses, all declaring that, in the light of the purpose of Congress to encourage gifts to charity, courts should not, indeed may not decide cases of this kind as technical problems to be decided by rule of thumb. Each case must be decided on its own facts with a due regard to that purpose, and when, as here, it clearly appears that according to human nature, and the common experience of mankind, "the prob-

ability of the invasion of the trust is so remote as not seriously to detract from its value", the deduction must be allowed.

As the first and most illustrious of these witnesses, I call Mr. Justice Holmes, in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; and following in his train, Commissioner of Internal Revenue v. Bonfils Trust, 10 Cir., 115 F.2d 788; Commissioner of Internal Revenue v. Wells-Fargo Bank & Union Trust Co., 9 Cir., 145 F.2d 130; Commissioner of Internal Revenue v. Robertson's Estate, 4 Cir., 141 F.2d 855. Earlier cases are Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710; Lucas v. Mercantile Trust Co., 8 Cir., 43 F.2d 39; and our case of First National Bank v. Snead, 5 Cir., 24 F.2d 186.

Covetousness, rapacity, and greed are as unvirtuous and unlovely in a governmental bureau as they are in the citizen, and courts should be as quick to call them what they are in the one case as in the other.

I dissent from the view of the majority that the judgment should be affirmed.