**UNION TRUST COMPANY and Bertha W. Sutherland, as co-executors of the Estate of Howard H. Sutherland, Deceased, Appellants,**

v.

**Laurie W. TOMLINSON, District Director of Internal Revenue, Appellee.**

No. 22330.

United States Court of Appeals Fifth Circuit.

Jan. 21, 1966.

Jack Clark, St. Petersburg, Fla., for appellants, Harris, Wing, Clark & Green, St. Petersburg, Fla., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Tampa, Fla., Meyer Rothwacks, Martin T. Goldblum, Attys., Dept. of Justice, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and FISHER, District Judge.

TUTTLE, Chief Judge.

This appeal is taken by the co-executors (hereinafter referred to as taxpayer) of the Estate of Howard W. Sutherland (hereinafter, decedent) from a judgment of the district court in favor of the Government, in a suit for refund of estate taxes. The case was submitted to the trial court on stipulated facts, as follows: The decedent died on August 11, 1958 with a gross estate, for estate tax purposes, of $308,876. He was 83 years old at death and was survived by his wife, Bertha, age 81. His will set up a "Marital Trust" and a "Residual Trust." The terms of the Marital Trust required the trustee to pay over all income to the decedent's widow for her life and to invade corpus for her health and maintenance and for so much "as she may request from time to time without any limitation whatsover." The wife was granted a power to appoint the remainder by her will.[1]

The residue of decedent's estate was to be held in a trust known as the Residual Trust under which the widow was bequeathed a beneficial life estate, and the trustee was empowered as follows:

"A. The trustee shall pay to or for the benefit of my wife, Bertha W. Sutherland, as much of the net income and/or principal of the Re-

sidual Trust as in its uncontrolled discretion it deems proper, taking into consideration the income she has from all other sources:

1. To enable her to maintain the standard of living to which she was accustomed at the time of my death;

2. To enable her to provide proper hospital, nursing, doctors and medical care for herself.

Any net income not required for the foregoing purposes shall be accumulated and added to the principal of the Residual Trust. It is my strong wish and desire, without limiting my Trustee's discretion herein, that at all times my Trustee's consideration shall be my wife's well-being and comfort and that my Trustee shall give sympathetic consideration to any requests that my wife may make from time to time, as I have every confidence that she will not ask for principal unless it is really required, and I, therefore, authorize and empower my Trustee to be generous in the exercise of this discretion even though there may be considerable depletion of the Trust Estate, provided, however, that the Trustee shall invade the principal of the Marital Trust for my wife whenever it shall find it practicable to do so rather than utilizing this power to invade the Residual Trust for her benefit, this provision being solely to effect tax savings by depletion of that part of my estate which will be taxable upon my wife's decease subsequent to my decease."

Under the terms of the Residual Trust, the remainder was to be distributed to certain qualified charities upon the widow's death. On the estate tax return, taxpayers claimed a deduction in the sum of $57,370.73 for the value of the charitable remainders with respect to the Residual Trust. They also claimed a deduction in the amount of $385.67 for

1. The Marital Trust is not directly involved in this case; its terms are relevant only as they may have bearing on

the decedent's intent with respect to the Residual Trust.

intangible personal property taxes for the year 1958 which were collected by the State of Florida after decedent's death. The District Director disallowed the claimed deductions and assessed a deficiency which taxpayer paid.

With respect to the Residual Trust, the District Court held that since the decedent's will did not create a sufficient standard from which to ascertain accurately the amount of the remainder interests at the time of the decedent's death, no deduction was allowable for the charitable remainders. It further held that since the intangible personal property tax imposed by the State of Florida "accrued" after the decedent's death, the amount paid in satisfaction thereof could not be deducted from the gross estate.

## I.

■ In order for the charitable remainder to qualify as a deduction, the trustee's power of invasion must be limited by definite and ascertainable fixed standards capable of being translated into terms of money. See Merchants Nat'l Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). In determining whether the trustee's power meets this test, we must first attempt to ascertain the intent of the testator as expressed in the will. See Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287, 290 (2d Cir. 1954). Here, although testator did use the magic words, "to enable her to maintain the standard of living to which she was accustomed at the time of my death," see Ithaca Trust Co., supra, 279 U.S. at 154, 49 S.Ct. at 291, he went much further. Had he stopped with "comfort and well being," the deduction might yet be saved, since these latter terms might reasonably be interpreted as meaning comfort and support according to the life beneficiary's accustomed mode of living. Compare Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953) ("comfort and welfare" interpreted as constituting an objective standard).

However, since the testator did not stop with "comfort and well being," the taxpayer must argue that the following additional terminology used by decedent in his will, [i] requesting that the trustee "give sympathetic consideration to *any request*" (emphasis added) made by his wife "from time to time," and [ii] "authorizing" and "empowering" the trustee to be "generous" in the exercise of his discretion, "even though there may be considerable depletion of the Trust Estate," was merely superfluous precatory language, which did not modify or broaden the preceding objective standard.

■ It should be noted that the use of the conjunctive or cumulative form in the crucial part of decedent's will ["*and* * * * give sympathetic consideration to *any* request my wife may make from time to time," (emphasis added)] militates against the taxpayer's contention. Such subjective standards of invasion bring "into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial." Merchants Nat'l Bank of Boston, supra, 320 U.S. at 263, 64 S.Ct. at 112. With regard to the proper principle of construction in such cases, the court in State Street Bank & Trust Co. v. United States, 313 F.2d 29, at 31 (1st Cir. 1963), said:

> We realize that wills may be redundant. But there is also a principle that additional words presumably import additional meaning. There comes a time when this principle must be recognized.

In accordance with this principle of construction and because any other view would permit the use of standards so subjective as to make computation of present values impossible, we hold that the charitable deduction must be denied.

## II.

Florida levies an intangible personal property tax under the authority of 10

Fla.Stat. 199.11, F.S.A. This tax is assessed on personal property owned by residents of Florida on January 1st of each year. However, the intangible personal property tax does not become "due and payable" until the first of November of each year, 10 Fla.Stat. 199.15, F.S.A. From this latter date the tax becomes a lien on the taxpayer's property in the county in which the tax is assessed, 10 Fla.Stat. 199.22, F.S.A.

The crucial issue here is whether the intangible personal property tax had "accrued" before decedent's death in August 1958, so as to qualify as a deductible expense in determining decedent's taxable estate, by virtue of 26 U.S.C. § 2053. The Treasury Regulations on Estate Tax interpret the statutory phrase "accrued before his death" to mean that property taxes "in order to be deductible must be an enforceable obligation of the decedent at the time of his death." But this provides little aid and merely establishes the normal test of deductibility for "claims against the estate" (Tres. Reg. on Estate Tax, § 20.2053–4).

Taxpayer premises its case for deductibility upon the fact that even if decedent had disposed of his property after January 1st, he would still be liable for the tax thereon. Thus, it submits that these taxes had not merely accrued in an accounting sense, but had become an absolute liability of decedent's estate on January 1, 1958, even though not payable until November.

The Government, on the other hand, while admitting that an enforceable obligation may presently exist, even though the time for payment is deferred, argues that absent a showing as to when the personal obligation for property taxes arises, the date of attachment of the lien is considered the determinative factor. Although the Government's argument has surface appeal, it begs the question to which the taxpayer has already provided the simple answer.

For the foregoing reasons, the judgment of the district court, insofar as it denied taxpayer a charitable deduc-tion, is affirmed, but insofar as it held that the Florida intangible personal property tax had not "accrued" at decedent's death, and, therefore, was not deductible, the judgment is

Reversed.