Samuel H. SALISBURY, as Executor Under the Will of Ora S. Hitchcock, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 29, Docket 30453.

United States Court of Appeals Second Circuit.

Argued Sept. 20, 1966.

Decided May 8, 1967.

Lumbard, Chief Judge, dissented.

Byron Johnson, Moser, Johnson & Reif, Stanton G. Levin, Rochester, N. Y., for plaintiff-appellant.

John T. Curtin, U. S. Atty., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Philip I. Brennan, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

Taxpayer, as executor under the will of Ora S. Hitchcock, brought an action pursuant to 28 U.S.C. § 1346(a) (1) in the United States District Court for the Western District of New York for a refund of a federal estate tax and assessed interest collected from the estate in the amount of $19,800.75, plus statutory interest from the date of collection. Taxpayer claims that the District Director of Internal Revenue erroneously collected

the tax because a charitable deduction in the amount of $106,425.45 had been improperly disallowed. Plaintiff moved for summary judgment, the Government cross-moved, plaintiff's motion was denied, and the Government's cross-motion was granted. The opinion and decision below is reported at 256 F.Supp. 30 (1966). Taypayer appeals.

Ora S. Hitchcock died on December 5, 1961, and her will was admitted to probate on February 7, 1962. The residue of her estate, after certain specific bequests, was governed by Article Third of her will which reads as follows:

All the rest, residue and remainder of the property which I may own at the time of my death, both real and personal, of every kind and nature and wherever situated, including any lapsed legacies, I give, devise and bequeath to Samuel H. Salisbury and Genesee Valley Union Trust Company of Rochester, New York, as Trustees, in trust, nevertheless, to hold, manage, invest and reinvest, collect the income and profit therefrom and distribute the same for the following uses and purposes:

(a) to distribute to my cousin, Samuel H. Salisbury, or expend on his behalf, the net income derived therefrom in quarterly or other convenient installments so long as he shall live.

(b) My disinterested Trustee is authorized in its sole and absolute discretion at any time and from time to time to distribute to my said cousin, Samuel H. Salisbury, or on his behalf, from the principal of this trust such amount or amounts as it may deem advisable to provide adequately for his maintenance, support and medical expenses.

*If*, in the opinion of my disinterested Trustee, *my said cousin*, Samuel H. Salisbury, *is incapacitated through illness, age or other cause, my disinterested Trustee may in its sole and absolute discretion*, from time to time, *while it believes such incapacity continues, apply all or part of the principal of this trust toward the support, care and benefit of my said cousin*, in such amount or amounts and in such manner as it may determine.

(c) Upon the death of my said cousin, (or upon my death if he shall not survive me) my surviving Trustee shall distribute the entire then remaining balance to The Commission on Ecumenical Mission and Relations of the Presbyterian Church located in New York, New York, for use in its foreign mission work.

(Emphasis supplied.)

The federal estate tax return which was timely filed on January 22, 1963 revealed a gross estate of $180,428.70, undisputed deductions in the amount of $17,370.77, and a claimed deduction of $106,425.45 representing the present value of the remainder interest granted to charity by subparagraph (c) of Article Third. The value of the charitable remainder was determined on the basis of the life expectancy of the life beneficiary as of the date of testator's death and under the assumption, verified by an affidavit filed with the return, that the trust principal would never be invaded as authorized by subparagraph (b) of Article Third inasmuch as the private beneficiary's financial resources were substantially in excess of his anticipated future needs. The district judge upheld the government position that the deduction was not authorized by § 2055 of the Internal Revenue Code of 1954 [1] because the trus-

---

1. The pertinent portions of § 2055 read as follows:

§ 2055. Transfers for public, charitable, and religious uses

(a) In general.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power,

tee's discretionary authority in the second sentence of subparagraph (b) to invade corpus for the "support, care and benefit" of the income beneficiary during an incapacitation through "illness, age or other cause" prevented the charitable interest from being "presently ascertainable" within the purview of Treas.Reg. § 20.2055–2(a) (1958).[2] We disagree, and as there are undetermined factual questions relative to the remoteness of the possibility that the charitable interest will not become effective within the meaning of Treas.Reg. § 20.2055–2(b) (1958)[3] and relative to the amount of any deduction, we remand for a determination thereof.

■■ As we have stated, the sole question on this appeal is whether the charitable remainder interest is "presently ascertainable."[4] The answer must be in the affirmative when the power of the life tenant to invade corpus is limited by an objective standard fixed by the terms of the will that is capable of being stated in terms of money. Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929). Absent a measurable standard limiting the power of invasion, the charitable deduction is disallowed, however remote or tenuous the possibility of invasion might be.[5] Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 599, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Berry v. Kuhl, 174 F.2d 565, 567 (7 Cir. 1949).

■■ The standards provided by a will are sufficiently fixed, objective, or

---

if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

\* \* \* \* \* \*

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;

(3) to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, or of such fraternal society, order, or association, is carrying on propaganda, or otherwise attempting, to influence legislation; or

\* \* \* \* \* \*

2. Section 20.2055–2(a) provides in pertinent part:

(a) *Remainder and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial in-

terest only insofar as that interest is *presently ascertainable,* and hence severable from the non-charitable interest. The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in Sec. 20.2031–7. \* \* \* (Emphasis supplied.)

3. Section 20.2055–2(b) reads in pertinent part:

(b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable *unless the possibility that the charitable transfer will not become effective is so remote as to be negligible* \* \* \*. (Emphasis supplied.)

4. The Government does not question that the trustee's discretion under the first sentence of subparagraph (b) to invade principal whenever "advisable \* \* \* for his [the beneficiary's] maintenance, support and medical expenses" is limited by a fixed standard. So our consideration is limited to the power granted by the second sentence of subparagraph (b).

5. Thus, extrinsic facts such as the financial circumstances of the life beneficiary, though relevant to the remoteness of invasion, are irrelevant to whether the charitable interest is "presently ascertainable". Seubert v. Shaughnessy, 233 F.2d 134, 137 (2 Cir. 1956).

measurable, when, and only when, the purposes for which corpus may be invaded are subject to "reliable prediction," Merchants National Bank of Boston v. CIR, 320 U.S. 256, 262, 64 S.Ct. 108, 88 L. Ed. 35 (1943), rather than to mere "speculation." 320 U.S. at 263, 64 S.Ct. 108. Thus the deduction is allowed when the life beneficiary's power of invasion is made referable to his standard of living as of testator's death, either expressly, as in *Ithaca Trust Co.*, supra, or by implication from "such words as 'comfort and support' * * * *if such interpretation* is consistent with applicable local law, and other terminology in the will or instrument does not require some different interpretation," Rev.Rul. 54–285, 1954–2 Cum.Bull. 302. The standards in the will also qualify as presently ascertainable if the occasions for invasion of principal are limited to physical and economic emergencies, see Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287, 289 (2 Cir. 1954), C. I. R. v. Wells Fargo Bank & Union Trust Co., 145 F.2d 130 (9 Cir. 1944), unless the objectivity of the standard is diminished by additional directions favoring the life beneficiary, as by insulating invasions of corpus from review or question, see DeCastro's Estate v. CIR, 155 F.2d 254, 255 (2 Cir. 1946). Absent such provisions, language authorizing invasion when necessary to meet such emergencies limits the extent of invasion to a maintenance of the life beneficiary's standard of living. See Lincoln Rochester Trust Co. v. McGowan, supra, 217 F.2d at 292.

Here, in the first sentence of subparagraph (b) the Hitchcock will expressly provides for Salisbury's "maintenance, support, and medical expenses" "at any time," while the second sentence deals specifically with any period of his incapacitation. As the trustee is authorized to invade corpus, not when strictly necessary to meet the exigencies of incapacitation within the established linguistic rubric, but for the beneficiary's "care, support and benefit" during such incapacitation, we must determine whether such phrasing also implies that the extent of permissible invasion is limited to maintenance of the beneficiary's "station in life." [6]

As we have already indicated, a phrase such as "comfort and support" connotes the objective station in life standard. Clearly, this interpretation is not limited to only those instances where these very words are used. 4 Mertens, Federal Gift & Estate Taxation, § 28.38, p. 407 (1959). Other language, such as "treatment, support and maintenance," Berry v. Kuhl, supra; "proper care, support and maintenance," Lincoln Rochester Trust Co. v. CIR, 181 F.2d 424 (2 Cir. 1950); "comfortable maintenance and support," Hartford-Connecticut Trust Co. v. Eaton, 36 F.2d 710 (2 Cir. 1929), have been deemed referable to a fixed standard of living, and even terminology containing words which, in other contexts, import a subjective, rather than an objective standard, have also been so interpreted, as *e. g.*, "comfort and welfare," Blodget v. Delaney, 201 F.2d 589 (1 Cir. 1953); "comfort or convenience," see Seubert v. Shaughnessy, 233 F.2d 134, 137 (2 Cir. 1956); "comfort and well-being," see Union Trust Co. v. Tomlinson, 355 F.2d 40, 42 (5 Cir. 1966); "support, maintenance, comfort and general well-being," Mercantile-Safe Deposit & Trust Co. v. United States, 252 F.Supp. 191 (D. Md.1966); "support, maintenance, welfare and comfort," Estate of Mary Cotton Wood, 39 T.C. 919, appeal dismissed per stipulation (2 Cir. 1963); and see, for identical language, Zentmayer's Estate v. CIR, 336 F.2d 488, 490 (3 Cir. 1964), "support, maintenance and comfort, including luxuries," see Vaccaro v. United States, 224 F.Supp. 307, 309 (D.Mass. 1963), and "maintenance, welfare, comfort and happiness," United States v. Powell, 307 F.2d 821 (10 Cir. 1962). Of course, when general or subjective words stand alone, as, *e. g.*, "use and benefit,"

6. The phrase "station in life" was equated with a standard of living as early as 1929 by Judge Learned Hand in Hartford-Con-necticut Trust Co. v. Eaton, 36 F.2d 710, 711 (2 Cir.).

Newton Trust Co. v. CIR, 160 F.2d 175 (1 Cir. 1947), "best interest," Estate of Helen Thompson, 17 CCH Tax Ct. Mem. 510 (1958),[7] or are used in conjunction with accompanying words which may be subjective or objective depending upon context, as, e. g., *"pleasure,* comfort and welfare," Henslee v. Union Planters National Bank & Trust Co., supra (emphasis supplied), they are generally interpreted so as not to restrict the use of trust principal to maintenance of the benficiary's standard of living. A similar interpretation prevails when language usually associated with the station in life standard is modified by more expansive terminology as, e. g., "for any purpose which may add to her [the beneficiary's] comfort or convenience," Seubert v. Shaughnessy, supra (emphasis supplied), or as "to provide proper maintenance and support to the same *generous* extent that I, if living, could do," Kline v. United States, 202 F. Supp. 849 (N.D.W.Va.1962), aff'd per curiam, 313 F.2d 633 ( 4 Cir. 1963) (emphasis supplied), or is supplemented by a clause which permits the invasion of corpus for an additional, less restrictive purpose, as, e. g., "and for any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister," Zentmayer's Estate v. CIR, 336 F.2d 488 (3 Cir. 1964); or as "and for any other reasonable requirement," State Street Bank & Trust Co. v. United States, 313 F.2d 29 (1 Cir. 1962) ;[8] or as "or will be for her best interests to receive," Vaccaro v. United States, supra, or as "or for any purpose whatsoever, whether included in the foregoing classification or not," Title Insurance & Trust Co. v. United States, 249 F.Supp. 386 (S.D.Cal.1965), or is supplemented by additional explanatory instructions to the trustee to favor the life beneficiary's interest in corpus at the expense of the charitable remainderman, as e. g., "my said Trustee shall exerise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries," Merchants National Bank of Boston v. CIR, supra, or as "the first object to be accomplished * * * is to take care of and provide for my mother in such manner as she may desire," Henslee v. Union Planters National Bank & Trust Co., supra. Moreover, even language expressly articulating the station in life standard, as in Ithaca Trust Co. v. United States, supra, may not establish an objective standard when the testator gives additional inconsistent instructions, as, e. g., "my Trustee shall give sympathetic consideration to any requests that my wife may make * * * and * * * be generous in the exercise of this discretion even though there may be considerable depletion of the Trust Estate," Union Trust Co. v. Tomlinson, 355 F.2d 40 (5 Cir. 1966) ; or as "My said Trustee shall liberally provide for my beloved wife * * * and * * * may use such reasonable sums from the principal as it, in its sole discretion may deem necessary," National Bank of Commerce of San Antonio v. Scofield, 169 F.2d 145 (5 Cir. 1948), cert. denied, 335 U.S. 907, 69 S.Ct. 410, 93 L.Ed. 441 (1949).

■■ Turning to the present case, we find no general or subjective words standing alone in the Hitchcock will; nor do

---

7. The Fourth Circuit, prior to the Supreme Court's pronouncement in Henslee v. Union Planters Bank & Trust Co., supra, had approved the "best interests" phraseology as establishing a presently ascertainable standard in CIR v. Robertson's Estate, 141 F.2d 855 (1944).

8. As the First Circuit stated, 313 F.2d at 31, these words appearing in the instrument there being interpreted "presumably import additional meaning." However, the application of such a rule of construction to language which specifies an additional permissible purpose authorizing the invasion of corpus when that language appears in a separate clause does not automatically compel a similar application when the language used is, as here, integrated into a single phrase rather than a separate clause. Indeed, so interpreting such integrated language would be inconsistent with the contextual approach followed in most of the above cases. See, e. g., Mercantile Safe Deposit & Trust Co. v. United States, supra ; United States v. Powell, supra.

we find expansive modifying language or additional permissive purposes or instructions to detract from the "support, care and benefit" guideline. This being so, the Government urges us to focus on the word "benefit," which, in a different context, has been held to provide no presently ascertainable standard, see Newton Trust Co. v. CIR, supra, and to totally disregard the preceding words, which concededly provide such a standard, cf. Lincoln Rochester Trust Co. v. CIR, supra. However, it is elementary that the key words of an instrument must be interpreted in light of their context, 4 Mertens, op. cit. supra, § 28.38, p. 407. The decisions of the Supreme Court in Merchants National Bank, supra, and Henslee v. Union Planters National Bank & Trust Co., supra, upon which the Government heavily relies, did not rest *exclusively upon* the subjective implications of "happiness" when preceded by "comfort, support, maintenance * * *" in the former, or on those of "pleasure" preceding "comfort and welfare" in the latter. See Merchants, supra, 320 U.S. at 263, 64 S.Ct. 108, 88 L.Ed. 35; Union Planters, supra, 335 U.S. at 598, 69 S.Ct. 290, 93 L. Ed.2d 259. Rather the Court was at least equally influenced by the presence of additional instructions which directed the trustee to ignore his otherwise primary duty to protect the interests of the remaindermen as well as those of the life beneficiary, see Blodget v. Delaney, supra, 201 F.2d at 593–594, in favor of the life beneficiary's "happiness" or "desires." [9] See Lincoln Rochester Trust Co. v. McGowan, supra, 217 F.2d at 291–292; Lincoln Rochester Trust Co. v. CIR, supra, 181 F.2d at 425; Blodget v. Delaney, supra at 592, and especially see United States v. Powell, supra, at 827–828, distinguishing *Merchants* and *Union Planters* solely on the ground of the additional instructions present therein.

Thus our inquiry is reduced to deciding whether a provision for "support, care and benefit," taken as a whole, is distinguishable in meaning from phrases providing for "support, maintenance, comfort and general well-being," "support, maintenance, welfare and comfort" or "comfort and welfare" which, as we have seen, establish presently ascertainable standards. Inasmuch as "benefit" is commonly understood to be a synonym of "welfare," Random House Dictionary of the English Language (Unabridged ed. 1966), we think that it would constitute verbal hairsplitting of the most offensive variety [10] to attribute such a subtle distinction in the use of words to the testatrix, whose intent of course is controlling, see Lincoln Rochester Trust Co. v. McGowan, supra, 217 F.2d at 290; Union Trust Co. v. Tomlinson, supra, 355 F.2d at 42. Moreover, as if to confirm our view as to the ordinary, hence presumptively intended, meaning of "support, care and benefit," the Second Circuit has characterized the only reported case [11] dealing with these very words as

---

9. Nor are the decisions finding no presently ascertainable standard attributable to provisions granting the trustees sole or absolute discretion to invade corpus. The Supreme Court in Henslee v. Union Planters, supra, made no reference to the trustees' power to "expend in their discretion," 335 U.S. at 595, 598–599. To the contrary, a grant of sole and absolute discretion to expend is not fatal to a claim for a charitable deduction if there also is an objective standard to guide trustees in the exercise of their discretion. See, e. g., Lincoln Rochester Trust Co. v. McGowan, supra; Blodget v. Delaney, supra.

10. The frequency of such "hairsplitting" has led jurists and commentators to seek more equitable alternatives to the "presently ascertainable" test of deductibility. See, e. g., Seubert v. Shaughnessy, 233 F.2d 134, 138 (2 Cir. 1956) (Clark, Ch. J., concurring); Blodget v. Delaney, 201 F. 2d 589, 594–595 (1 Cir. 1953) (Magruder, Ch. J., concurring); Taggart, Charitable Deductions for Transfers of Remainder Interests Subject to Invasion, 21 Tax.L. Rev. 535, 562 (1966).

11. This case, Blunt v. Kelly, 131 F.2d 632 (3 Cir. 1942), held that a transfer of securities in trust (income and principal to be distributed when "necessary" for the settlor's "support, care or benefit," with remainder over) was intended to take effect at death within the purview of §

a case which dealt with a provision for "support and maintenance," see CIR v. Irving Trust Co., 147 F.2d 946, 949 (2 Cir. 1945), certainly an acceptable standard, cf. Berry v. Kuhl, supra; Lincoln Rochester Trust Co. v. CIR, supra; Hartford-Connecticut Trust Co. v. Eaton, supra.

■ Our interpretation is also consistent with the applicable state law [12] which, in view of its power over the trustee's invasion of corpus, is highly persuasive in matters of will construction under § 2055 of the Internal Revenue Code of 1954, see Rev.Rul. 54–285, 1954–2 Cum.Bull. 302, quoted supra; Lincoln Rochester v. CIR, 181 F.2d 424, 426 (2 Cir. 1950); Blodget v. Delaney, 201 F. 2d 589, 592 (1 Cir. 1953). In New York, the state in which the testatrix was domiciled at the time of her death, the station in life standard has been deemed implicit in will provisions for "care, support and comfort," In Re Martin's Will, 269 N.Y. 305, 199 N.E. 491 (1936), "proper care, comfort and maintenance," Holden v. Strong, 116 N.Y. 471, 22 N.E. 960 (1889), "welfare," In Re Buell's Estate, 198 Misc. 358, 66 N.Y.S.2d 180 (Surr. 1946), and even "comfort and happiness," In Re Elmendorf's Estate, 205 Misc. 543, 129 N.Y.S.2d 370 (Surr.1954). It is noteworthy that in *Elmendorf's Estate*, supra, the court used the terms "comfort and support" interchangeably with "comfort and happiness," see 129 N.Y.S.2d at 373, and, in view of its citation, without discussion, of *Merchants National Bank*, supra ("comfort, support, maintenance and/or happiness"),

see 129 N.Y.S.2d at 373, the court apparently considered the result in *Merchants* to have been primarily based on the additional instruction to favor the life beneficiary. As we have noted earlier in this opinion, the Tenth Circuit in United States v. Powell, 307 F.2d 821, 827 (1962), adopted the same interpretation of *Merchants*.

In view of our previous discussion of federal authorities, we find that the cases relied on by the Government which construe "benefit" in a different context, e. g., In Re Rachlin's Will, 133 N.Y.S.2d 151 (Surr.1954) ("benefit" alone); In Re Emmons' Will, 165 Misc. 192, 300 N.Y.S. 580 (Surr.1937) ("use and benefit"); as well as cases based primarily on the existence of additional instructions, e. g., In Re Caro's Estate, 47 Misc. 2d 217, 262 N.Y.S.2d 45 (Surr.1965), distinguished on this ground in In Re Meyer's Estate, 51 Misc.2d 397, 273 N.Y.S.2d 285, 288 (Surr.1966), are clearly inapposite. In sum, it is unlikely that the New York courts would interpret the trustee's power here to invade corpus by construing "benefit" out of context and performing the verbal gymnastics required to distinguish "support, care and benefit" from "welfare" or "comfort and happiness," see In Re Buell's Estate, supra, and In Re Elmendorf's Estate, supra. Cf. Application of Miller, 235 N.Y.S.2d 125, 128–129 (Sup.Ct.1962), interpreting the phrase "support, maintenance, education and benefit" in N.Y. Personal Property Law, McKinney's Consol.Laws, c. 41, § 266(2) (McKinney 1959) so as to exclude "extraneous purposes" for the beneficiary's "use and

---

302(c) of the Internal Revenue Code of 1926 notwithstanding that the remainderman was one of the trustees who were to determine the occasion, if any, for invasion of principal because the trustees' discretion was held limited by their good faith evaluation of the necessity for invasion and was subject to review by a court of equity. That such language does not confer upon the trustees an uncontrolled discretion does not, however, guarantee the existence of a "presently ascertainable" standard.

12. This consistency is not surprising as New York has by statute instructed its courts to apply federal law in state estate tax proceedings dealing with charitable deductions in which identical problems of will construction are presented. N.Y.Tax law, McKinney's Consol.Laws, c. 60, § 955 (McKinney 1962); In Re Caro's Estate, 47 Misc.2d 217, 262 N.Y.S.2d 45, 47 (Surr.1965).

benefit" such as the financing of a trip to Europe for both social and educational purposes.

■ Moreover, even assuming *arguendo* that "benefit" were not so limited by its present context, the Government's contention that the beneficiary could, in the event of his incapacity, utilize corpus to spend his remaining days in regal luxury far beyond his previous standard of living, must fail. The testatrix restricted such use of trust principal to the duration of incapacity, which restriction anticipates eventual recovery. This suggests that resorts to principal may be had for the purposes of curing his incapacity and maintaining his standard of living should his independent means of maintenance prove inadequate, see In Re Downey's Will, 277 App.Div. 921, 98 N.Y.S.2d 439, 440 (3d Dep't 1950); Berry v. Kuhl, 174 F.2d 565, 568 (7 Cir. 1949), by reason of incapacitating circumstances. Indeed, if such unrestrained erosion of corpus were permitted for a first temporary incapacity there might be none left for subsequent incapacities, which eventuality is certainly not foreclosed by the language of the will.

■ Nor are we persuaded by the Government's makeweight alternative argument that the provision for invasion of corpus for the beneficiary's "support, care and benefit" if he should become incapacitated through "illness, age or other cause" is so broad as to permit the beneficiary to enjoy corpus by merely choosing to incapacitate himself. The phrase "other cause" would ordinarily refer only to extrinsic causative factors such as illness or old age, and is defined and limited further by its subsequent context, see Berry v. Kuhl, supra, at 568.

■ Having concluded that the authorized invasion of corpus is limited by a "presently ascertainable" standard,

" * * * it becomes necessary to examine the remoteness of invasion, or the extent of possible invasion, in terms of the standard, to determine the likelihood that the charity will take and the value of what it will receive." Newton Trust Co. v. CIR, 160 F.2d 175, 178–179 (1 Cir. 1947); see Lincoln Rochester Trust Co. v. CIR, 181 F.2d 424, 427 (2 Cir. 1950).

As these determinations cannot be made from the present record, summary judgment, which taxpayer unsuccessfully sought below, is improper. See Mercantile Safe Deposit & Trust Co. v. United States, 252 F.Supp. 191, 199 (D.Md. 1966). Accordingly, we remand for consideration of these questions.

Reversed and remanded.

LUMBARD, Chief Judge (dissenting):

I dissent.

I agree with the majority that New York case law ought to be considered as "highly persuasive" in determining the content of the phrase "support, care and benefit," since it is that state's law which would ultimately determine the extent of the limitation, if any, upon the power of the trustee to invade corpus. "Support" and "care" are among the words used in clauses of limitation which have long been viewed as capable of providing an objective standard in New York, e. g., In re Martin's Will, 269 N.Y. 305, 199 N.E. 491 (1936), as elsewhere. On the other hand, the New York courts have appeared to define the word "benefit" in broad terms, without other limits than those attendant the typical fiduciary relationship.[1] E. g., In re Rachlin's Will,

---

1. "The word 'benefit' is more comprehensive than the word 'support' and is 'anything that works to the advantage or gain of the recipient.' * * * If petitioner [trustee] determines that the payment of the principal sum will be for the widow's benefit she has the discretionary power to do so. Such action must be

motivated by a proper purpose and not by either the whim of the trustee or her personal convenience. It should be exercised only after full consideration of the impelling circumstances and not from caprice, careless good nature or to obtain relief from further fiduciary duties. * * * In making her determination pe-

133 N.Y.S.2d 151, 152 (Surr.Ct.1954); In re Emmons' Will, 165 Misc. 192, 300 N.Y.S. 580 (Surr.Ct.1937). Compare Zentmayer's Estate v. Commissioner, 336 F.2d 488, 490–491 (3 Cir. 1964); Newton Trust Co. v. Commissioner, 160 F.2d 175, 179–180 (1 Cir. 1947). Particularly in drafting of wills and trusts "additional words presumably import additional meaning," State Street Bank & Trust Co. v. United States, 313 F.2d 29, 31 (1 Cir. 1963), and we cannot consider that the choice of wording here was inadvertent. Inasmuch as the disinterested trustee could in good faith under the New York decisions deplete the corpus when in the trustee's "opinion" the life beneficiary "is incapacitated through illness, age or other cause * * *," I do not see how it is possible to determine with any degree of certainty the extent of such invasion of principal. Compare DeCastro's Estate v. Commissioner of Internal Revenue, 155 F.2d 254 (2 Cir.), cert. denied, 329 U.S. 727, 67 S.Ct. 82, 91 L.Ed. 630 (1946); Commerce Trust Co. v. United States, 167 F.Supp. 643 (W.D.Mo.1958).

Further, while the majority goes to great length to demonstrate the importance of viewing the critical words of the will in their proper context, and attempts to distinguish the major cases on the grounds that additional broadening instructions appeared in the instrument, no consideration has been given to the fact that the trustee in the instant case in construing his own power to invade has been given "sole and absolute discretion" to apply all or part of the principal to the life beneficiary as long as the trustee believes such incapacity to continue. Compare, e. g., Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949). I cannot agree with the opinion of the court which holds that the value of the remainder to be paid over to charity is capable of present ascertainment. I would therefore affirm the judgment.

titioner need not take into consideration or account the personal income of the beneficiary from any other source." In

re Rachlin's Will, 133 N.Y.S.2d 151, 152 (Surr.Ct.1954) (citations omitted).