Estate of Louisa J. Martin, deceased, James H. Lemon, Stanley V. Morgan, and Marshall N. Dudley, Executors v. Commissioner.
Estate of Martin v. Commissioner
Docket No. 746-66.
United States Tax Court
T.C. Memo 1968-296; 1968 Tax Ct. Memo LEXIS 2; 27 T.C.M. (CCH) 1564; T.C.M. (RIA) 68296; December 30, 1968, Filed *2 Decedent provided for a testamentary trust out of the residue of her estate with assets of about $239,900, to pay the trust income for life to her surviving sister, Ann, and, upon the death of Ann, to distribute part of the corpus to named beneficiaries, and then to distribute one-half of the balance of the corpus to a named charitable organization. The trust terminated upon the death of Ann. By the terms of the trust instrument the trustee was authorized to pay to Ann so much of the principal as the trustee should in his "sole discretion" deem necessary or desirable "for the maintenance, comfort and benefit" of Ann. Held, the trust instrument provided measurable standards limiting the power of invasion, and the possibility of invasion of the corpus was so remote as to be negligible. Therefore the charitable bequest is deductible under section 2055, 1954 Code. Estate of Mary Cotton Wood, 39 T.C. 919, followed. Grant N. Nickerson, 205 Church St., New Haven, Conn., for the petitioners. John K. Antholis, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in estate tax of $55,684.09. The issue is whether the value could be ascertained, at the time of decedent's death, of a remainder interest in a testamentary trust under decedent's will, which was 1565 bequeathed to a charitable organization, where the trustee was authorized to pay to the life beneficiary of the trust income so much of the trust corpus as the trustee, in his sole discretion, *4 should deem "necessary or desirable for the maintenance, comfort and benefit" of the life beneficiary, without regard for her income from other sources. Because of necessary adjustments agreed upon by the parties, a recomputation of the amount of the estate tax liability will be required under Rule 50. Findings of Fact The stipulated facts are so found, and they are incorporated herein by reference. The estate tax return was filed timely with the district director of internal revenue in Hartford, Conn. The petitioners are the duly appointed executors of decedent's estate. The decedent died testate on March 9, 1962, at the age of over 89 years, a resident of Guilford, Conn., her legal domicile. The decedent was survived by her sister, S.E.A. Ann Martin, who was 79 years old when the decedent died. The decedent did not have any children or dependents. The decedent never married. Her sister, Ann, never married, and she did not have any dependents. In her will, the decedent provided for the creation of a testamentary trust for the benefit of Ann during her lifetime, to be terminated upon the death of Ann. The trust income could be paid to Ann during her lifetime. Ann died *5 on January 30, 1965, two years and 10 months after the death of Louisa. Ann died at the age of about 82 years. Louisa, in her will and the codicil thereto, provided that all of the residue and remainder of her estate should be held in trust, by James H. Lemon, trustee, during Ann's life; and that upon her death the trust corpus and any accumulated income should be distributed, as follows, in general: (1) Monetary bequests were to be paid to named individuals in specified amounts totaling $16,000. (2) Monetary bequests were to be paid in specified amounts, totaling $17,000, to named religious and charitable organizations. After the payment of the specified pecuniary bequests aggregating $33,000, one-half of the balance of the trust assets was to be distributed to the children of a niece; and one-half of the balance of the trust was to be distributed to a charitable organization, The Christian Science Benevolent Association of Chestnut Hill, Massachusetts. All of the charitable and religious beneficiaries of the corpus of the trust are qualified organizations under sections 501(c) (3) and 2055(a), 1954 Code. The taxable estate of Louisa, as adjusted, was about $339,886. The trust *6 corpus had a value of roughly $239,942. In the estate tax return filed by the executors of the decedent's estate, deductions were taken in the aggregate amount of $17,000 for the pecuniary bequests to the four named charitable and religious organizations, and a deduction was taken of $179,556.47 for the bequest to The Christian Science Benevolent Association of the onehalf of the balance of the trust, after the payment of all of the specific pecuniary bequests totaling $33,000 (as set forth above). The total amount of the charitable bequests deducted in the estate tax return was $196,556.47, all of which the respondent disallowed on the ground that the aggregate value of the several charitable, beneficial interests, bequeathed in her will by the decedent, "was not ascertainable as of the date of her death, and, hence, not severable from the non-charitable interests". The parties have stipulated certain facts which were not taken into account by the executors when the estate tax return was filed, on the basis of which the petitioners now claim a total net charitable deduction under section 2055(a) in the amount of $100,222.79. The stipulation is as follows: In the event that the *7 Court decides the issue in this case contrary to the respondent's determination, holding that the estate of the decedent is entitled under section 2055(a) to deductions for bequests of remainder interests and sums to charitable and religious organizations, then the following shall be taken into account: (1) The amount of all legacy succession, inheritance, transfer and estate taxes, including Federal estate taxes will be in the amount of $77,990.75. (2) The value of the life interest of Ann Martin in the residue of the estate of Louisa J. Martin after taxes and before specific bequests (to be made from such residue after the death of the life tenant) will be $56,710.54. (3) The portion of the life interest, in such residuary estate, which is to be subtracted from the aggregate charitable bequests in arriving at the net charitable deduction will have a value in the amount of $21,554.59. (4) The total net charitable deduction will be $100,222.79. 1566 The clauses in Paragraph Fourth of the decedent's will and the codicil thereto giving authorizations to the trustee to pay trust income to Ann, and to make payments out of the trust corpus to Ann, in his sole discretion, are as follows: *8 1. To pay over the net income derived therefrom in reasonable installments, but at least annually, for the use, benefit, comfort, support and maintenance of my sister, S.E.A. Ann Martin, during her lifetime, in accordance with the standard of living to which she shall be accustomed to at the time of my death, without regard to her income from other sources, including her own. 2. Said Trustee shall have full power and authority to accumulate income derived from said Estate and to pay over, in the sole discretion of said Trustee, from time to time, so much of the principal of this trust and/or accumulated income as the trustee shall deem necessary or desirable for the maintenance, comfort and benefit of my said sister, S.E.A. ANN MARTIN, without regard for her income from other sources, including her own. * * * The main assets of the testatmentary trust created under the decedent's will consisted of shares of stocks and other securities which had a total value on the alternative valuation date of about $361,400. The aggregate income of the trust from dividends and interest during the period in which the trust was in existence, until the death of Ann on January 30, 1965, amounted *9 to about $24,411; and the net income after the payments of the trustee's fees and taxes was about $18,210. The trustee distributed net income of the trust to Ann, the income beneficiary, in the following approximate amounts prior to the death of Ann: $8,089.46 in 1963; $8,919.72 in 1964; and $483 in 1965; a total sum of $17,492.18. During the period from March 9, 1962, until January 29, 1965, the only amounts paid to or for the benefit of Ann by the trustee of the trust were on account of and from the net income of the trust. No amounts were paid by the trustee to or for the benefit of Ann from the principal and corpus of the trust fund; and during this period no demands or requests were made to the trustee by Ann, or on her behalf, for the payment of any money or property out of the principal and corpus of the trust to her or for her benefit. At the time of the death of Louisa, the decedent, Ann owned in her own right bonds, stocks, and other securities having a then fair market value in the aggregate amount of $540,000. Ann reported in her individual income tax returns for the five years, 1960 through 1964, adjusted gross income in the following amounts: 1960
$20,024.92
1961
30,247.56
1962
20,854.09
1963
20,886.89
1964
20,660.02
*10 In 1961, Ann purchased a house in Guilford, Conn., with her own funds, at the price of $22,000, where she and Louisa lived for a while. Ann sold this house and purchased a second house in Guilford in 1961 for $30,000. Louisa and Ann lived together for many years. They were members of the Christian Science Church. Each one was acquainted with the other's requirements and accustomed manner of living. During the last years of their lives, at least, and from at least 1959, the accustomed manner and standard of living of each, Louisa and Ann, was modest, unpretentious, simple, and not luxurious. In 1960, both lived in the home of Mrs. P. Canne, a registered nurse, for a short time. They owned their household furniture and furnishings, which were modest and had been acquired over a period of many years, and since at least 1959, neither one of them made any major purchases of furniture and appliances. Neither one of them, at least since 1959, purchased much clothing, and both of them dressed simply. After the death of Louisa, Ann's living arrangements continued to be simple and modest. Her social contacts were confined to visits with friends; she did not travel; and her vacations were *11 spent, for about three weeks, at the Dorset Inn in Dorset, Vt., where the rates were reasonable, where she had gone for vacations for many years. Although Ann drove an automobile until her last few years, she owned only one car, a British Ford, which she had owned for several years. Ann was living in Dorset, Vt., at the time of her death. In general, from at least 1959, Ann lived simply and modestly; she did not enjoy luxuries or expensive entertainment; she dressed simply and plainly, and her expenditures for clothing were modest. The possibility at the time of Louisa's death in 1962 that the trustee would disburse any principal of her testamentary trust to Ann was so remote as to be negligible. 1567 Opinion The facts and the issue in this case are so similar to those in Estate of Mary Cotton Wood, 39 T.C. 919 (1963), as to make the reasoning in the Wood case applicable. See, also, Salisbury v. United States, 377 F. 2d 700 (1967). The principles, basic criteria, and guidelines to be taken into account in determining whether the bequest of a charitable remainder interest is deductible were set forth in Ithaca Trust Co. v. United States, 279 U.S. 151. *12 As we observed in Wood, p. 923, "There, the testamentary trust provided for charitable remainders after a life estate for the decedent's wife with authority to withdraw from principal any sum 'that may be necessary to suitably maintain her in as much comfort as she now enjoys.' The court held that the power to invade principal could be exercised only in accordance with a standard that was 'fixed in fact and capable of being stated in definite terms of money' and 'not left to the widow's discretion' (279 U.S. at 154); and that since the income was more than sufficient to maintain the widow as required, the gift of the charitable remainders was not so uncertain as to preclude the deduction." The respondent argues that the critical provision in the will of the decedent relating to the trustee's discretion to invade the trust corpus for the benefit of the life beneficiary brings this case within the reasoning of Merchants Bank v. Commissioner, 320 U.S. 256, and Henslee v. Union Planters Bank, 335 U.S. 595, "where the standards for invasion of the principal were so loose as to be virtually nonexistent, or, in the very least, incapable of being translated *13 in terms of money." See Estate of Mary Cotton Wood, supra, p. 923, and the additional observations made there about Merchants Bank, and Henslee v. Union Planters Bank. In Salisbury v. United States, supra, p. 703, 704, the court stated that the established guideline in determining that a charitable remainder is "presently ascertainable" is that "the power of the life tenant to invade corpus is limited by an objective standard fixed by the terms of the will that is capable of being stated in terms of money," citing Ithaca Trust Co.; and that the "standards provided by a will are sufficiently fixed, objective, or ascertainable, when, and only when, the purposes for which corpus may be invaded are subject to 'reliable prediction', * * * rather than to mere 'speculation'", citing Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 262, 263. In the will of Louisa, the decedent, the power of invasion was limited by the words "maintenance, comfort and benefit". It is the contention of the respondent that the word "benefit" extends the power of invasion of the trust corpus without limitation. Hence, the dispute here is focused upon *14 the noun "benefit" as used in Clause Fourth, subclause 2, of the decedent's will. Respondent does not direct his argument against the words "maintenance" and "comfort". The nature of the controversy in this case is not novel. See the discussion and review of cases in Salisbury v. United States, supra, pp. 704-706; and in Estate of Mary Cotton Wood, supra, 923-924; and Estate of Oliver Lee, 28 T.C. 1259. In Wood, p. 924, this Court recognized that "there are a variety of cases on both sides of the line, some of them very close to the line. But the problem in each case is to construe the words of the particular instrument in the light of the instrument as a whole." It is our judgment that the present case is on the same side of the line as Ithaca Trust, and not on the other side represented by Merchants Bank and Henslee v. Union Planters Bank. We think that the three nouns, "maintenance, comfort and benefit" were intended in the aggregate to describe the life beneficiary's standard of living in all its aspects and were not intended to incorporate such subjective and elusive concepts as "happiness", "pleasure", and "desire" (Merchants Bank and *15 Henslee v. Union Planters Bank). Moreover, in considering the will of Louisa as a whole, we are not impelled to regard other words in subclause 2 of Clause Fourth of the will as authorizing the trustee to construe the power of invasion liberally and subjectively in favor of the income beneficiary, rather than within the life beneficiary's standard of living. Admittedly, the word "maintenance" is generally regarded as referable to a standard of living and, the addition of the words "comfort" and "benefit", in the context of the will in this case, in our opinion, merely "rounds out the standard of living concept". See Wood, p. 924. See also, Salisbury, p. 707, where the court expressed the view, with respect to the word "benefit", that "benefit" 1568 normally would be construed within, and not outside of, the context of the phrase in which it is found here, "maintenance, comfort and benefit". We are satisfied that the instrument here does provide a reasonable standard for determining "the extent to which the charitable remainders might be depleted by the power of invasion". Wood p. 924 In addition, it is noted that the word "comfort" has been regarded generally as describing *16 a measurable and ascertainable standard. Rev. Rul. 54-285, 1954-2 C.B. 302. See, also, Hartford-Connecticut Trust Co. v. Eaton, 36 F. 2d 710 (C.A. 2, 1929), in which it is clear that the law of Connecticut is in accord with that general view, and that the phrase "maintenance and comfort", in the context of the instrument before us here would limit the power of invasion to maintain the life beneficiary's standard of living. Consideration has been given to cases cited by the respondent, including Newton Trust Co. v. Commissioner, 160 F. 2d 175 (C.A. 1, 1947). Without undertaking to discuss and distinguish the cited cases, it is concluded that they are inapposite. It is the entire context of the clause within which the noun "benefit" is found which represents a measurable, objective standard. See, for example, Blodget v. Delaney, 201 F. 2d 589 (C.A. 2, 1953); and Estate of Abraham L. Buckwalter, 46 T.C. 805 (1966). In the instrument here the noun "benefit" is in conjunction with "maintenance" and "comfort", rather than in the disjunctive; the clause is not "maintenance, comfort, or benefit". The noun "benefit", here, *17 is part of a multiple description and characterization, and it is used to complement the other nouns in the clause. There remains the factual question whether there was any liklihood or possibility of invasion. Cf. Estate of Oliver Lee, supra, 1261, 1262; Berry v. Kuhl, 174 F. 2d 565, 567 (C.A. 7, 1949). At the time of Louisa's death in 1962, Ann was 79 years old; she was unmarried and did not have any dependents; she owned in her own right securities having a fair market value of $540,000; and her income from her own assets had amounted to $20,024.92, in 1960, $30,247.56, in 1961, and $20,854.09, in 1962. Although the parties in their stipulation about Ann's own income for the years 1963 and 1964 have not clearly shown the amount of Ann's own income in those two years, apart from the trust income distributed by the trustee in 1963 and 1964, ($8,089.46 and $8,912.72), it is clear that in 1963 and 1964 Ann's income from her own assets was in the neighborhood of at least $13,000 per year. We are satisfied from the evidence that Ann's manner of living, before and after the death of Louisa, was modest and that her expenses were within her own income, exclusive *18 of any of the trust income. We are satisfied on the record here that as of the date of decedent's death the possibility of invasion of the trust corpus was so remote as to be negligible, and have so found as a fact. The Commissioner's determinations, in issue, therefore must be disapproved. Decision will be entered under Rule 50.